*888 OPINION OF THE COURT
Michael D. Stallman, J.
In this CPLR article 78 proceeding, petitioner Thomas Travers seeks to annul respondents’ determination denying his application for accidental disability retirement (ADR) as a result of a heart condition. Petitioner argues that respondents’ determination was arbitrary and capricious because they did not apply the presumption of General Municipal Law § 207-k, also known as the “Heart Bill.”
On May 17, 1999, petitioner submitted an application for ADR under the Heart Bill, claiming disability due to aortic regurgitation, diagnosed as moderately severe. At the same time, the Police Commissioner submitted an application for ordinary disability retirement (ODR) on behalf of petitioner. In support of his application, petitioner submitted a report dated April 27, 1999 by a cardiologist, Dr. William J. Scarpa. Dr. Scarpa reviewed a doctor’s report, a CT scan of petitioner’s chest and a stress electrocardiogram. Dr. Scarpa found no signs of ischemic heart disease and no hypertension, though Dr. Scarpa noted that petitioner has been taking antihypertensive drugs.
The Medical Board of the Police Pension Fund, Article II reviewed petitioner’s and the Commissioner’s applications on June 14, and October 25, 1999, each time recommending ODR and denying ADR. The Medical Board’s examination revealed a long decrescendo aorta diastolic murmur of grade 3 intensity. The Medical Board believed he should not continue as a police officer.
After remand by the Board of Trustees, the Medical Board again examined petitioner on April 3 and April 10, 2000, this time recommending disapproval of both applications. This time, the Medical Board reviewed two echocardiogram tapes and found that both showed no significant abnormalities. On July 17, 2000, a New York Police Department cardiologist examined petitioner, stating his prognosis was poor for return to full duty, and that he should be placed on restricted duty.
Petitioner submitted a second application for ADR on May 17, 2001. At the same time, the Commissioner again submitted an application for ODR. The Medical Board examined petitioner on July 13, 2001 but only considered and recommended approval of the Commissioner’s application. The Medical Board’s examination showed petitioner’s blood pressure at 180/80, pulse at 70 beats per minute (bpm), no clinically enlarged heart, a diastolic *889 murmur and clubbing of the fingers. The Board of Trustees remanded the matter to the Medical Board because it did not consider petitioner’s application.
The Medical Board examined petitioner again on February 8, 2002, recommending approval of ODR and disapproval of ADR. The Medical Board’s examination revealed petitioner’s blood pressure at 150/70, pulse at 68 bpm, no clinically enlarged heart, and murmurs, which were consistent with a diagnosis of aortic valve disease. The Medical Board stated, in pertinent part:
“The cause of this condition in this officer is not known. He does have some evidence of aortic dilation, which may have predisposed him to the aortic incompetence. There is no evidence of hypertension, which occasionally can cause these conditions. There is no evidence that the aortic incompetence and the aortic dilation is caused by the officer’s occupation as a police officer.”
Petitioner was examined again on July 19, 2002, and the Medical Board adhered to its decision. The Medical Board stated, “[t]he officer is disabled due to his Aortic Valve Disease as explained in the previous decision. This is not considered to be a work-related condition.”
Petitioner was examined for the last time on April 4, 2003. In the April 4, 2003 minutes, the Medical Board concluded:
“The rationale for the decision of July 19, 2002, is as follows: The officer suffers from dilatation of the ascending aorta, associated with aortic valve incompetence. This condition is not known to be caused by work-related factors. It is known to be due to a congenital anomaly, and it is well-known that it may be undetected on routine physical examination until it reaches a certain degree of severity.
“Since there is no evidence that this condition is work-related, and it was undetected at the time he became a police officer (he probably has had it since youth) the Article II Medical Board reaffirms its previous decision of approval of the Police Commissioner’s application for [ODR] and disapproval of the officer’s own application for [ADR] under the provisions of the Heart Bill.”
On September 10, 2003, the Board of Trustees accepted the recommendation of the Medical Board and retired petitioner on an ODR pension.
Generally, the applicant for ADR benefits has the burden of establishing both that he is disabled and that his disability was *890 the result of an accidental injury received in city service. (See e.g., Matter of Danyi v Board of Trustees of N.Y. City Employees’ Retirement Sys., 176 AD2d 451 [1st Dept 1991].) However, the Heart Bill entitles a police officer disabled due to heart disease to an evidentiary presumption that the disabling heart condition is the result of an accidental injury, and that the injury was received in the performance of official duties. (See Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman, 52 NY2d 463 [1981].) The statute provides that the presumption may be overcome by competent evidence to the contrary. (General Municipal Law § 207-k [a].)
For an idiopathic heart condition, i.e., one of unknown cause, the presumption is rebutted when the condition is unaccompanied by coronary artery disease or hypertension. (Matter of Goldman v McGuire, 101 AD2d 768 [1st Dept 1984], affd 64 NY2d 1041 [1985] [idiopathic ventricular hypertrophy, because no coronary disease, vital signs in normal limits]; Matter of Valias v Safir, 304 AD2d 353 [1st Dept 2003] [idiopathic dilated cardiomyopathy unaccompanied by coronary artery disease or hypertension]; accord Matter of Wholihan v Vanessen, 254 AD2d 492 [2d Dept 1998] [mild cardiomyopathy].)
The presumption is also rebutted if established medical knowledge demonstrates that the heart disease is congenital, viral, or only the result of a childhood disease, such as rheumatic fever (see Matter of Burns v Safir, 305 AD2d 142 [1st Dept 2003] [fibrillation was congenital]; Matter of Lo Pinto v Ward, 124 AD2d 497 [1st Dept 1986] [well-established medical fact that neither physical nor emotional stress causes mitral valve prolapse]). Similarly, the presumption is rebutted when medical knowledge establishes that police work cannot cause the heart condition at issue. (Matter of Callaghan v Bratton, 253 AD2d 390 [1st Dept 1998] [no activity or function in the performance of police duties which can predispose or precipitate atrial fibrillation attacks].)
“It is well settled that the courts cannot weigh the medical evidence or substitute their own judgment for that of the Medical Board.” (Matter of Santoro v Board of Trustees of N.Y. City Fire Dept. Art.l-B Pension Fund, 217 AD2d 660, 660 [2d Dept 1995].) The Medical Board’s determination as to causation must be based on “some ‘credible evidence.’ ” (See Matter of Goldman v McGuire, 101 AD2d 768, 770, affd 64 NY2d 1041 [1985], supra.) However, “[n]either the Medical Board nor the Board of Trustees [are] required to identify the actual cause of the heart *891 condition at issue.” (Matter of Stegmuller v Brown, 216 AD2d 23, 23 [1st Dept 1995].)
Here, the Medical Board concluded, on February 8, 2002, that the cause of petitioner’s heart condition was unknown, but later concluded, on April 4, 2003, that it was probably congenital.
To the extent that the cause of petitioner’s heart condition could be unknown, the presumption of the Heart Bill was not rebutted. The evidence before the Medical Board ruled out coronary heart disease, as indicated by the report dated April 27, 1999 from Dr. Scarpa, petitioner’s private cardiologist, submitted for the Medical Board’s consideration. (See petitioner’s exhibit C.) However, the Medical Board minutes noted petitioner’s high systolic blood pressure, and that petitioner was taking Accupril, a blood pressure medication. (See petitioner’s exhibits N, S, U.) Dr. Scarpa’s report also stated that petitioner has been taking antihypertensive drugs. Because petitioner’s heart condition is accompanied by hypertension, the presumption of the Heart Bill would not be rebutted if the cause of his condition were unknown. The Medical Board’s opinion that aortic valve disease is not stress related is conclusory, and thus insufficient to rebut the Heart Bill’s presumption. (Matter of Lunt v Ward, 159 AD2d 404, 404 [1st Dept 1990].)
To the extent that petitioner’s heart condition could be congenital (as the Medical Board determined was possible on April 4, 2003), no evidence supports that conclusion. In previous minutes, the Medical Board did not conclude that petitioner’s condition was congenital; neither did any doctor reach that conclusion in the reports. The only new evidence before the Medical Board were the verbatim minutes of the Police Pension Board, dated December 11, 2002, which only remanded the matter to the Medical Board for questions that went unaddressed. The Medical Board drew its conclusion based only on the knowledge that petitioner’s condition could be congenital, that the condition can remain undetected until it reaches a certain degree of severity, and that petitioner was not diagnosed with the condition when he became a police officer. This reasoning assumes the matter at issue. A police department medical exam that does not reveal petitioner’s condition (assuming it was competently performed) no more establishes that the condition was then present and undetectable, than it establishes that the condition was never present at all.
Respondents’ reliance on Matter of DiTucci v Fire Dept, of City of N.Y. (Sup Ct, Kings County, Sept. 20, 1994, Huttner, J., *892 Index No. 41197/1993) is misplaced. In that case, the Medical Board concluded that the petitioner’s heart condition, aortic root dilation, was congenital, based on the report of a cardiothoracic surgeon. Here, unlike Matter of DiTucci, the record does not contain any report from a physician stating that petitioner’s condition is congenital.
Therefore, the Medical Board erred in shifting the burden to petitioner to demonstrate a nexus between his heart condition and his work as a police officer. In so stating, the Medical Board placed the burden of proving causation upon petitioner, whereas the Heart Bill explicitly presumes causation unless the presumption is rebutted by credible evidence.
It is readily apparent that the Medical Board offered scant explanation for many of its previous recommendations, and that its recommendations contradict one another. The Medical Board did not adequately explain why it concluded that the cause of the petitioner’s heart condition was unknown, but then later concluded it was due to a congenital defect. (See Matter of Naimoli v Kelly, Sup Ct, NY County, Apr. 20, 2004, Ling-Cohan, J., Index No. 108274/2003 [remanding to Medical Board due, in part, to inadequate explanation for reversal of conclusions].) The operative facts were known to the Medical Board on both occasions. Although the Medical Board’s own conclusion is considered expert opinion (cf Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d 139 [1997]), the presumption of the Heart Bill, to be given its intended statutory effect, is not overcome where the Medical Board itself offers conclusory, contrary opinions as to causation.
Nevertheless, respondents argue that the Medical Board’s decision was correct because a discussion of aortic valve disease by the Cleveland Institute, available on the Internet, does not list stress among the causes for aortic regurgitation. However, respondents have not shown that this information was before the Medical Board or constituted reliable, well-established medical knowledge. Therefore, this information may not be used to support their determination. In any event, the list does not appear exhaustive. The fact that stress is not mentioned as a cause for aortic regurgitation does not imply that it has been conclusively ruled out as a cause.
Matter of Simmons v Herkommer (62 NY2d 711 [1984]) does not dictate a different result. There, the Court upheld the Medical Board’s recommendation denying ADR benefits, based on its expert opinion that petitioner’s heart disease was not related to *893 the stresses of occupational activities or the performance and discharge of police duties, but rather to childhood diseases. The opinion of the Medical Board in Matter of Simmons does not appear to be that, within a reasonable degree of medical certainty, aortic valve disease cannot be caused by stress. Rather, the Medical Board opined that the cause of petitioner’s condition in that case was childhood disease, which is sufficient to rebut the Heart Bill’s presumption. Unlike Matter of Simmons, the Medical Board here did not attribute petitioner’s condition to a childhood disease. It is undisputed that petitioner did not have rheumatic fever as a child.
Accordingly, it is adjudged that the petition is granted, and the determination of respondent Police Pension Fund dated September 10, 2003, denying petitioner’s application for disability retirement, is annulled, and the matter is remanded to the Medical Board and the Board of Trustees of the Police Pension Fund for reconsideration and further proceedings not inconsistent with this decision.