*192 OPINION OF THE COURT
Lottie E. Wilkins, J.
Petitioner seeks an order, pursuant to CPLR article 78, annulling respondents’ determination which denied petitioner’s application for accident disability retirement benefits and directing respondents to retire petitioner with a line-of-duty accidental disability allowance retroactive to the date of his retirement on ordinary disability. In the alternative, petitioner asks that the matter be remanded for further hearings and that petitioner be allowed to present additional testimony in support of his application for accident disability benefits. Petitioner also seeks a subpoena pursuant to CPLR 2307 directing service of the record and minutes of the proceedings below.
Petitioner became a uniformed police officer with the New York City Police Department (NYPD) on December 8, 1997. It is not seriously disputed that, shortly after the September 11, 2001 attacks, petitioner was assigned to work at the World Trade Center site for some period of time. Sometime in or about July 2004, respondent Police Commissioner submitted an application to the Article II Medical Board on petitioner’s behalf for ordinary disability retirement (ODR). The Commissioner submitted the application on the recommendation of the Police Supervising Chief Surgeon who, in May 2004, diagnosed petitioner with symptoms of depression, anxiety and agoraphobia. On November 8, 2004, the Article II Medical Board unanimously approved the Commissioner’s application for ODR, finding that petitioner suffered from major depressive disorder.
Although the Medical Board approved the Commissioner’s ODR application on November 8, 2004, it actually first reviewed the file about three months earlier, on August 9, 2004. At that first review, petitioner was examined in person and the Board reviewed reports from the Police Department’s Psychological Evaluation Unit (PEU), as well as from Dietra Gamar, a social worker who treated petitioner, and Hillery Bosworth, M.D., a psychiatrist.
The May 3, 2004 PEU report, written by police psychologist Marissa Barra, covered the preceding year during which petitioner’s psychological problems were followed by PEU. During much of that time, petitioner was out sick from work as an apparent result of regular anxiety and panic attacks. According to Ms. Barra, petitioner first walked into PEU on June 30, 2003 while being treated by another doctor for a cardiac condition. At that first meeting, petitioner reported that he had been *193 experiencing anxiety since January 2002 and that, in March 2003, an angiogram confirmed the presence of coronary artery disease and a 30% blockage in one of his coronary arteries. Petitioner also reported that his mood had worsened significantly in January 2003 and that, within a week of his March 2003 angiogram, his mother also died. Following a visit to Lenox Hill Hospital on June 28, 2003, petitioner met with Dr. Bosworth for the first time and also began therapy with Dietra Gamar. Ms. Barra’s report concluded by questioning whether petitioner “possibly had a longer standing depression” than had been previously recognized. She noted little improvement in petitioner’s symptoms — which included panic attacks, sleep disturbance, decreased appetite, lack of concentration and motivation, social withdrawal and feelings of sadness — despite a year of therapy and medication. Ms. Barra concluded with a diagnoses of generalized anxiety disorder and major depressive disorder and questioned whether petitioner would ever be well enough to report back to full duty.
The Medical Board also considered a July 11, 2003 letter from petitioner’s therapist, Dietra Gamar, written at petitioner’s request. In her letter Ms. Gamar stated that petitioner was deeply affected by his mother’s death in early 2003 and was overwhelmed with grief, all while dealing with his own coronary disease problems. Although Ms. Gamar’s letter did mention that petitioner had been assigned to Ground Zero following 9/11, she did not opine that the episode was causally connected to any of petitioner’s psychological problems.
The final piece of information the Medical Board considered on its first review of the ODR application was an August 19, 2003 letter from psychiatrist Hillery Bosworth, also sent to PEU at petitioner’s request. Dr. Bosworth stated that she had been seeing petitioner on a monthly basis for psychopharmacologic management and that he had been diagnosed with moderate panic disorder with agoraphobia and major depressive disorder. Dr. Bosworth reported that petitioner was taking Paxil and Ativan. She did not offer an opinion on the cause (or causes) of petitioner’s condition.
Notwithstanding the above information, the Medical Board would not render a decision on the Commissioner’s ODR application. After noting that the reports from the treating social worker and psychiatrist were over one year old, the Board deferred decision pending receipt of updated reports from them, including estimates as to petitioner’s prognosis.
*194 In a November 3, 2004 letter, Dr. Bosworth expressed a belief that petitioner “could adequately perform virtually any work duty, with the possible exception of duty which requires the ability at all times to react instantly to a life and death situation.” In her November 7, 2004 update, Dietra Gamar opined that petitioner was fully competent to work in an administrative capacity, but not ready to return to full and active duty. Although there was some mention of 9/11 and the death of petitioner’s mother, neither Dr. Bosworth nor Ms. Gamar offered an opinion as to the cause of petitioner’s disability. With this additional information having been provided, the Medical Board approved the Commissioner’s application for ODR on November 8, 2004.
Several months later, on May 5, 2005, petitioner applied for accident disability retirement (ADR). In a letter attached to his application, petitioner stated that, after September 11, 2001, he began to suffer from chronic fatigue, shortness of breath and chest pains. Petitioner further stated that, as a result of 9/11 and other life changing circumstances, he had become a “different person.” This application apparently included a third letter from Dr. Bosworth, dated May 4, 2005, wherein she states that “it is possible that [petitioner’s] exposure to 9/11 may have exacerbated his conditions.’* Because petitioner had submitted a new application for ADR benefits on his own behalf, the Police Pension Fund Board of Trustees remitted petitioner’s case back to the Medical Board for reevaluation and reexamination. On June 20, 2005, after its reevaluation, the Medical Board unanimously denied petitioner’s application for ADR and unanimously reaffirmed its prior approval of the ODR benefits. Both determinations were subsequently affirmed by the Board of Trustees on November 9, 2005. This article 78 proceeding ensued.
Petitioner claims that denial of his ADR application was arbitrary and capricious, as well as violative of state and federal statutes and constitutions. Specifically, petitioner alleges that the Board of Trustees did not apply the proper legal test for determining eligibility for line-of-duty ADR benefits and that *195 the final determination was not based on substantial evidence. Respondents argue that the determination to deny petitioner’s application for ADR was neither arbitrary nor capricious under the circumstances because there is some credible evidence in the record on which to base the conclusion that petitioner’s disability was not caused by his assignment to the World Trade Center site. Additionally respondents argue that petitioner cannot qualify for the World Trade Center presumption because he did not file the necessary notice of participation.
Ordinary disability retirement, or ODR, is available to a member of the NYPD when a medical examination shows that the member is physically or mentally incapacitated for the performance of duty and ought to be retired (see, Administrative Code of City of NY § 13-251). Accident disability retirement benefits, which are greater than ODR benefits, are available when examination and investigation shows that the member is physically or mentally incapacitated for the performance of duty as a natural and proximate result of an accidental injury received in the line of duty and that such disability was not the result of wilful negligence on the part of the member and that the member should be retired (see, Administrative Code of City of NY§ 13-252).
Generally speaking, an applicant for ADR benefits must prove the existence of a disability and that the disability is causally related to an injury sustained in the line of duty (see, Matter of Drayson v Board of Trustees of Police Pension Fund of City of N.Y., 37 AD2d 378 [1st Dept 19713). Courts defer to rational determinations by the Board of Trustees of the Police Pension Fund when it comes to applications for accident disability benefits, especially determinations regarding causation (see, Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 60 NY2d 347 [1983]). “Ordinarily, the decision of the board of trustees as to the cause of an officer’s disability will not be disturbed unless its factual findings are not supported by substantial evidence or its final determination and ruling is arbitrary and capricious” (id. at 351, citing Matter of Fiore v Board of Educ. Retirement Sys. of City of N.Y., 48 AD2d 850 [1975], affd 39 NY2d 1016 [1976]; Matter of Drayson v Board of Trustees of Police Pension Fund of City of N.Y., 37 AD2d 378, 380 [1971], affd 32 NY2d 852 [1973]).
Although the burden of proof with respect to causation usually rests with the ADR applicant, the Legislature has seen fit to provide a presumption in favor of accidental line-of-duty *196 causation in certain situations. One such situation involves members of the NYPD who, like petitioner, worked at the World Trade Center site following the 9/11 attacks. The Administrative Code provides that a
“disability to a member who participated in World Trade Center rescue, recovery or cleanup operations for a minimum of forty hours shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by the member’s own willful negligence, unless the contrary be proved by competent evidence” (Administrative Code of City of NY § 13-252.1 [1] [a]).
This section of the Administrative Code specifically includes “post-traumatic stress disorder, anxiety, depression, or any combination of such conditions” as qualifying disabilities for purposes of this presumption. (Administrative Code § 13-252.1 [1] [c] [iv].) As a condition precedent to eligibility for the presumption, however, the member must file a sworn statement on a form provided by the Retirement System setting forth the dates and locations of employment (Administrative Code § 13-252.1 [1] [e]).
There is no body of case law analyzing what constitutes proof by competent evidence for purposes of rebutting the World Trade Center presumption, however, the parties point to a line of cases discussing whether there is some credible evidence to support a “no causation” determination on a typical ADR application (see, Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d 139 [1997]; Matter of Cusick v Kerik, 305 AD2d 247 [1st Dept 2003]; Matter of Rodriguez v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 3 AD3d 501 [2d Dept 2004]). Additionally, the parties cite to cases dealing with the so-called “Heart Bill,” which creates a similar presumption that a previously undetected heart condition is causally related to an accidental injury sustained in the line of duty and which also has identically worded rebuttal language as the World Trade Center presumption (see, General Municipal Law § 207-k; see also, Matter of Travers v Kelly, 12 Misc 3d 887 [Sup Ct, NY County 2006, Stallman, J.]; Matter of Wendling v Kelly, Sup Ct, NY County, Nov. 4, 2005, Feinman, J., Index No. 100187/04). Interestingly, the Court of Appeals has held that the two standards are essentially the same: in order to rebut the presumption, there must be some credible medical evidence in the record on which to base the determination that *197 the (presumed) accidental injury did not cause the disability (see, Matter of Goldman v McGuire, 64 NY2d 1041 [1985], affg 101 AD2d 768 [1st Dept 1984]; see also, Matter of Meyer, supra, 90 NY2d 139).
Applying the above standard to these facts, there was credible medicad evidence in this record on which to base the determination that petitioner’s disability was not caused by his assignment to the World Trade Center site. There were numerous references in the materials reviewed linking petitioner’s anxiety and panic, as well as the depression that came with them, to the death of his mother and his incipient cardiac disease. Furthermore, notwithstanding the existence of a statutory presumption, neither Dr. Bosworth nor Ms. Gamar offered a conflicting opinion that causally linked petitioner’s psychological ailments to his World Trade Center assignment. If anything, the absence of causation opinions in the reports from petitioner’s treating professionals left even more room for the Medical Board’s exercise of its own expertise on the question of causation (cf. Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 761 [1996]; Matter of Drayson v Board of Trustees of Police Pension Fund of City of N.Y., 37 AD2d 378, 381 [1st Dept 1971], affd 32 NY2d 852 [1973]).
Nor do these facts raise issues similar to the ones dealt with by the Appellate Division in Matter of Petrella v Board of Trustees of Police Pension Fund (141 AD2d 361 [1st Dept 1988]). For one thing, there is no factual assertion in this record which would suggest that petitioner had a preexisting psychological condition which was aggravated by his assignment to the World Trade Center site. Moreover, it does not appear on this record that respondents misapplied any relevant causation rules. Respondents rationally relied on evidence in the record which suggested that petitioner’s condition was caused by “life changing circumstances,” and not his service at Ground Zero (see, Matter of Lahm v Bloomberg, 29 AD3d 461 [1st Dept 2006]).
Respondents alternatively argue that the petition should be denied in any event because petitioner did not submit the necessary forms in order to qualify for the World Trade Center presumption prior to applying for ADR. There is indeed a requirement that any officer seeking the benefit of the World Trade Center presumption must submit a form supplied by the Retirement System indicating the dates and locations of service (Administrative Code of City of NY § 13-252.1 [1] [e]). Petitioner here did submit a letter wherein he discussed his service at the *198 World Trade Center site, but there is no indication that he submitted a “Notice of Participation.” This technical argument could, on its own, be sufficient to defeat petitioner’s claim of entitlement to the World Trade Center presumption. However, respondents have not clearly established that such a form is available from the Retirement System or that its submission is regularly considered as a condition precedent for the presumption. In general, this argument is only cursorily asserted and, given the court’s disposition on the merits, is academic. The court finds no merit to petitioner’s broader statutory or constitutional claims. Petitioner’s motion for a subpoena is likewise denied. Accordingly, it is ordered and adjudged that the petition is denied and the proceeding dismissed.

 Petitioner annexes two additional letters from Dr. Bosworth, dated August 22, 2005 and December 22, 2005, but both these letters postdate the Medical Board’s consideration of petitioner’s ADR application and, thus, are dehors the administrative record. The December 22, 2005 letter even postdates the Board of Trustees’ final determination on the application. It is also noteworthy that the December letter is addressed to the New York State Office of Temporary and Disability Assistance, not the Medical Board or Pension Fund.