OPINION OF THE COURT
Jack M. Battaglia, J.
Petitioners Lawrence J. Harley and Gerard Ledwith, retired firefighters who participated in rescue and recovery at Ground Zero, challenge denial of their respective applications for accident disability retirement/line-of-duty retirement benefits. Because the court can find no articulated explanation for the determinations that petitioners were not disabled at the time of their retirement, those determinations are annulled, and the matters remanded to the Board of Trustees of the 1-B Pension Fund.
Petitioner Ledwith made application for accident disability retirement in August 2003, and his application was followed in November 2003 by an application on his behalf by the Fire Commissioner. The Commissioner’s application was based upon a report dated September 14, 2003 from the Department’s Chief Medical Officer, Dr. Kerry J. Kelly, on the results of a Medical Committee assessment of petitioner’s condition. The Committee consisted of Dr. Kelly, Dr. David J. Prezant, and a Dr. Gasalberti, employees of the Department’s Bureau of Health Services commissioned to “examine! ] a firefighter for purposes of fitness for duty, i.e. whether the firefighter is fit for full duty, or if the firefighter is unable to perform full duty, whether he or she is able to perform a light duty assignment, or must be placed on medical leave.” (See verified answer at 3 n 1.)
In its report, the Committee diagnosed petitioner with “[c]linical asthma with airway hyperreactivity,” rendering him “unfit for firefighting activity.” The Committee noted, “Future exposure to dust, noxious fumes and/or toxins may precipitate life-threatening bronchospasm and/or may worsen the progression of his underlying disease.”
“A firefighter is entitled to accidental disability retirement when a medical examination and investigation shows that he or she is ‘physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service.’ ” (Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 *1070 NY2d 139, 144 [1997], quoting Administrative Code of City of NY § 13-353.) The Fire Department’s Medical Committee plays no formal or institutional role in determining a firefighter’s application for accident disability retirement, or for what is characterized as “ordinary” disability retirement (see Administrative Code § 13-352). Rather, “[l]ike other City pension funds and retirement systems, application for accidental disability retirement involves a two-tier administrative process.” (See Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d at 144.)
“Following a medical examination (which in each of these cases was conducted by the Fire Department medical committee), the three-physician member pension fund Medical Board, charged with passing upon all such required medical examinations and investigating all essential information in connection with a disability retirement application . . . , determines whether the member is disabled for performance of duty and ought to be retired ... If the Medical Board concludes that the member is disabled, it must further determine whether the disability is ‘a natural and proximate result of an accidental injury received in such city-service’ and certify its recommendation on this issue to the Board of Trustees, the body ultimately responsible for retiring the pension fund member and determining the issue of service-related causation.” (Id., quoting Administrative Code § 13-353.)
The Medical Board first considered petitioner Ledwith’s applications on March 15, 2005, deferring a determination pending further pulmonary function testing. On June 23, 2005, the Medical Board “recommended” that the application for accident disability retirement be denied. In a written determination consisting of a scant seven sentences, the Board noted that the requested pulmonary function testing showed “normal airflows, lung volumes, and diffusion capacity,” and that petitioner’s “history suggested that he has mild intermittent asthma, his auscultation is normal today.” The Board concluded that “there is insufficient evidence of a respiratory disability.”
In a letter dated November 5, 2005, the Board of Trustees advised petitioner Ledwith, “Since the 1-B Medical Board’s determination as to disability is binding on the Board of Trustees, the Board of Trustees ‘noted’ [his] case.” This was the Board’s “final action” on the applications.
*1071 The course of proceedings on petitioner Lawrence Harley’s applications was similar. Petitioner was examined by the same Medical Committee that assessed petitioner Ledwith. The Committee’s June 15, 2003 report stated a diagnosis of “[c]linical asthma with airway hyperreactivity,” and concluded that petitioner was “unfit for firefighter activity.” Likewise, “[fluture exposure to dust, noxious fumes and/or toxins may precipitate life-threatening broncospasm and/or may worsen the progression of his underlying disease.” Petitioner applied for accident disability retirement, and an application on his behalf was filed by the Fire Commissioner.
The Medical Board first considered petitioner Marley’s applications on February 3, 2005, and requested further pulmonary function studies. On May 5, 2005, the Board denied his request for disability retirement based upon his respiratory condition, concluding that “he has mild intermittent asthma with normal respiratory reserve, and that he is capable of full fire duty.” On this issue, the written determination was comprised of seven sentences. After a referral for an orthopedic examination, the Medical Board considered the applications again on July 25, 2005. The Board noted that petitioner had undergone further testing “at the request of Dr. Prezant of the Fire Department, which revealed some borderline hyperreactivity, which is consistent with his mild intermittent asthma.”
The Board again concluded that petitioner “is not disabled due to his respiratory condition.” In a letter dated November 7, 2005, he was notified by the Board of Trustees, as had petitioner Ledwith, that the Medical Board’s determination had been “noted” as the Trustees’ “final action.”
Neither petitioner challenges the Medical Board’s diagnosis of “mild intermittent asthma.” Nor is there now any dispute as to “service-related causation” (see id.). Because the Medical Board did not find either petitioner “physically or mentally incapacitated for the performance of city-service,” it was not required to determine whether the condition was “a natural and proximate result of an accidental injury received in such city-service.” (See Administrative Code § 13-353.)
It is important to note, however, that, pursuant to a statute known as the “Lung Bill,” “any condition of impairment of health caused by diseases of the lung, resulting in total or partial disability or death” to a firefighter “shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proved by competent evidence.” *1072 (See Administrative Code § 13-354; see also Matter of Battista v Board of Trustees of N.Y. State Fire Dept. Pension Fund, 188 AD2d 598, 598-599 [2d Dept 1992].) And pursuant to a statute known as the “WTC Disability Law,” a similar presumption would apply to a “qualifying condition or impairment of health,” specifically including asthma, resulting in disability to a firefighter who participated in World Trade Center rescue, recovery or cleanup operations. (See Administrative Code § 13-353.1; see also Matter of Jefferson v Kelly, 14 Misc 3d 191, 195-198 [Sup Ct, NY County 2006].)
“The burden of proof of disability to entitle a member of the fire department to disability retirement is on the retiree.” (Matter of Nemecek v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 99 AD2d 954, 955 [1st Dept 1984].) “In an article 78 proceeding challenging the disability determination, the Medical Board’s finding will be sustained unless it lacks rational basis, or is arbitrary or capricious.” (Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996].) “The issue of whether a firefighter is disabled is determined by the Medical Board . . . , and its ‘determination ... is conclusive if it is supported by some credible evidence and is not irrational.’ ” (Matter of Stack v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 38 AD3d 562, 562-563 [2d Dept 2007], quoting Matter of Rodriguez v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 3 AD3d 501, 501 [2d Dept 2004].)
“[C]redible evidence is evidence that proceeds from a credible source and reasonably tends to support the proposition for which it is offered.” (Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d at 147.) “[I]t must be evidentiary in nature and not merely a conclusion of law, nor mere conjecture or unsupported suspicion.” (Id.) “[A]n articulated, rational, and fact-based medical opinion” constitutes “credible evidence.” (See id. at 148.) A “detailed and fact-based report[ ] of the Medical Board, explaining the basis for its conclusion” constitutes “credible evidence.” (See id. at 152.)
“Where conflicting medical evidence and medical reports are presented to the Medical Board, it is solely within the province of the Medical Board to resolve such conflicts.” (Matter of Vastola v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 37 AD3d 478, 478 [2d Dept 2007].) “The court cannot weigh the medical evidence and substitute its own judgment for that of the Medical Board.” (Id.; see also Matter of Borenstein v *1073 New York City Employees’ Retirement Sys., 88 NY2d at 761.) A Medical Board determination does not lack credible evidence simply because, as in these cases, it disagrees with the assessment of the Fire Department’s Medical Committee. “[T]he two medical groups . . . have different responsibilities with different burdens of proof.” (Matter of Nemecek v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 99 AD2d at 955.)
Petitioners rely primarily on the conclusions of the Fire Department Medical Committee, allegedly supported by a number of professional journal articles and similar materials. In a prior decision, this court permitted petitioners to amend their respective petitions to incorporate these materials, but noted that the materials were not supported by the affidavit or affirmation of any expert who might imbue them with probative value or even explain their significance. (See Marley v Board of Trustees of N.Y. Fire Dept. Art. 1-B Pension Fund, 15 Misc 3d 1103[A], 2007 NY Slip Op 50473[U], *3 [Sup Ct, Kings County 2007].) Petitioners have not cured that deficiency.
Certain of the materials, nonetheless, are worthy of attention. In a September 7, 2006 determination, the same Medical Board that denied petitioners’ applications denied the application of another firefighter with a diagnosis of “mild intermittent asthma.” In so doing, the Board recognized the authority of the Guidelines for the Diagnosis and Management of Asthma, found in an Expert Panel Report published by the National Institutes of Health (NIH), National Heart, Lung, and Blood Institute. The Guidelines classify asthma according to severity, with “mild intermittent” the least severe. The other classifications are “mild persistent,” “moderate persistent,” and “severe persistent.”
The Guidelines state, however, that “[p]atients at any level of severity can have mild, moderate, or severe exacerbations,” and that “[s]ome patients with intermittent asthma experience severe and life-threatening exacerbations separated by long periods of normal lung function and no symptoms.” (See Guidelines for the Diagnosis and Management of Asthma, NIH Publication No. 97-4051, at 20 [July 1997].) Although neither the governing statute nor case law provide any definition or standards for determining “disability’ 7‘ ‘incapacit[y] for the performance of duty,” that determination must include an assessment of the effects of a physical or mental condition on the safety of the firefighter, other firefighters, and the general public. (See McGrail v Equitable Life Assur. Socy. of U.S., 292 NY 419, 425 [1944].)
*1074 In addition to the NIH Guidelines, the other submitted materials worthy of attention are two journal articles coauthored in part by Dr. David J. Prezant and Dr. Kerry J. Kelly, two of the three members of the Fire Department Medical Committee that found both petitioners “unfit for firefighting activity.” (See David J. Prezant et al., Cough and Bronchial Responsiveness in Firefighters at the World Trade Center Site, 347 New Eng J Med 806 [2002]; Gisela I. Banauch et al., Persistent Hyperreactivity and Reactive Airway Dysfunction in Firefighters at the World Trade Center, 168 Am J Respiratory & Critical Care Med 54 [2003].) Noting that “there is little existing literature describing the development and time course of bronchial hyperreactivity, and its relationship to exposure intensity, after natural or man-made disasters,” these Medical Committee members participated in a “prospective comparative cohort study of FDNY rescue workers.” (See Gisela I. Banauch et al., Persistent Hyperreactivity and Reactive Airway Dysfunction in Firefighters at the World Trade Center, 168 Am J Respiratory & Critical Care Med 54, 54 [2003].)
There is nothing in the Medical Board determinations denying petitioners’ applications or elsewhere in the record that would suggest that the members of the Medical Board have familiarity with the performance requirements of firefighting, or the respiratory conditions of firefighters who participated at Ground Zero, comparable to that of Drs. Prezant and Kelly. One of the members of the Medical Board is appointed by the Board of Trustees, one is appointed by the Commissioner of Hospitals, and the third is the Chief Medical Examiner of the City Civil Service Commission. (See Administrative Code § 13-323.) Indeed, an earlier medical board sent an applicant to Dr. Prezant as an independent pulmonary expert. (See Matter of Battista v Board of Trustees of NY. State Fire Dept. Pension Fund, 188 AD2d at 598-599.)
It is in this context that the court finds the Medical Board’s determinations as to petitioners Marley and Ledwith to be completely devoid of any articulated basis for concluding that “mild intermittent asthma” is not a disabling or incapacitating condition for firefighting. As previously noted, the determinations are purely conclusory. There is no description of the performance requirements for firefighting, no description of the characteristics of “mild intermittent asthma,” and no assessment of any risk that the diagnosed condition will threaten the safety of any person during the anticipated course of firelight *1075 ing activity. At the least, the Medical Board’s determinations are not in such form as to allow adequate judicial review. (See Matter of Perkins v Board of Trustees of N.Y. Fire Dept. Art. 1-B Pension Fund, 59 AD2d 696, 697 [1st Dept 1977]; see also Matter of Rodriguez v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 3 AD3d at 502; Matter of Stack v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 38 AD3d at 563.)
The September 7, 2006 determination denying another firefighter’s application was made in response to a remand from the Board of Trustees “requesting clarification of [the Medical Board’s] denial of [the firefighter’s] application for the Lung Bill.” Although the writing is four pages in length, as compared to the few sentences given to petitioners here, it contains only the following statements relating the firefighter’s condition to the performance requirements of the job:
“We consider fire fighting potentially deleterious to individuals with concurrent active inflammation of their airways. On the other hand, there is no evidence that individuals with mild intermittent asthma have airway inflammation in between episodes or that they are more susceptible to the effects of smoke and other inhaled substances encountered during fire fighting during these quiescent periods than are individuals without asthma.” (See New York Fire Department Pension Fund, Sept. 7, 2006, exhibit B to supplemental reply, third page.)
Even if these statements appeared in the Medical Board’s determinations with respect to petitioners here, the court would find them inadequate. A statement of “no evidence,” assuming it is a correct characterization of the Medical Committee’s assessment and other professional materials discussed above, cannot substitute for the exercise and articulation of the expert “scientific” judgment that has been found to warrant near-conclusive deference to the Medical Board’s determination. (See Matter of City of New York v Schoeck, 294 NY 559, 566 [1945]; Matter of Schwarzrock v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 238 AD2d 596, 597 [2d Dept 1997].) The court would not presume to say that the Medical Board did not exercise that judgment on petitioners’ applications, but it has no difficulty concluding that it cannot be found in the written determinations or elsewhere in this record. The fact of the Board’s determination, binding as it is on the Pen *1076 sion Fund’s Board of Trustees and this court, is not in itself sufficient, as it is not in itself “credible evidence.”
Judgment is awarded to petitioners, granting that branch of each petition that is to annul the findings of the Medical Board with respect to petitioners’ respective applications for accident disability retirement benefits by reason of mild intermittent asthma, and remitting the matters to the Board of Trustees of the New York City Fire Department Article 1-B Pension Fund for new medical reports and new findings by the Medical Board, and a new determination by the Board of Trustees with regard to each petitioner’s application for accident disability retirement.