*505 OPINION OF THE COURT
Jane S. Solomon, J.
In this CPLR article 78 proceeding, petitioner Nilda Macri, on behalf of her deceased husband, Police Officer Frank Macri (Macri), seeks a judgment annulling the action of Raymond Kelly, as the Police Commissioner of the City of New York, and as Chairman of the Board of Trustees of the Police Pension Fund, Article II, the Board of Trustees of the Police Pension Fund, Article II (Board of Trustees), the New York City Police Department and the City of New York (collectively respondents), which denied petitioner a line-of-duty combat death benefit pursuant to Administrative Code of the City of New York § 13-244, and also denied her a World Trade Center (WTC) line-of-duty death allowance, pursuant to Administrative Code § 13-252.1 (the World Trade Center Presumption Bill or WTC Bill), and ordering respondents to grant her these death benefits.
Respondents seek dismissal of the petition, and contend that they acted reasonably, lawfully and properly in denying petitioner death benefits pursuant to the WTC Bill.
Background and Factual Allegations
Macri was appointed to the uniformed force of the New York City Police Department (NYPD) on February 1, 1995, after transferring from a housing police officer position. He became a member of the Police Pension Fund shortly thereafter.
On September 11, 2001, Macri responded to the World Trade Center attacks. According to his line-of-duty injury report dated October 11, 2001, he was “knocked to the ground due to explosion causing lacerations to left arm and right leg,” and also “received smoke inhalation and laceration to left cornea and right cornea.” (Respondents’ exhibit 2.) Macri provided rescue, recovery and clean-up work at the World Trade Center site from September 11, 2001 until October 1, 2001. He continued to provide rescue, recovery and clean-up work at the World Trade Center and Fresh Kills Landfill sites from November 1, 2001 until January 2002.
On July 25, 2002, after complaining of sudden onset pain in his left thigh, Macri sought treatment from an orthopedist. The orthopedist noted as follows, in pertinent part:
“This 46 year old police officer is complaining of the sudden onset of aching pain in his left thigh, starting about two or three weeks ago without specific injury that he is aware of. He is athletically inclined *506 and incorporates multiple athletics into his living style and works out frequently ....
“He doesn’t smoke and has an occasional social drink ....
“On further discussion, he notes that he did have a similar episode in the spring when he woke up one day with pain in the buttock and thigh which subsided in a few days.” (Respondents’ exhibit 13.)
After several tests were performed, in August 2002, Macri was diagnosed with an aggressive form of lung cancer.
On August 22, 2002, an application was submitted on Maori’s behalf for ordinary disability retirement (ODR).
Macri started to receive chemotherapy and treatment for his cancer. On December 23, 2003, an MRI concluded that the cancer had spread to Maori’s brain. Despite having brain surgery, on January 31, 2005, Maori’s lung cancer had metastasized to his brain, liver, lung and bones. Macri passed away on September 3, 2007 as a result of the cancer.
Via letters dated October 3 and October 10, 2007, petitioner applied for line-of-duty combat death designation benefits as well as a World Trade Center death designation. (Respondents’ exhibit 4.)
Medical Board’s First Review:
The Medical Board of the Police Pension Fund (Medical Board) considered petitioner’s application for death benefits pursuant to the WTC Bill on October 31, 2007. (Respondents’ exhibit 5.) The Medical Board reviewed petitioner’s file, which consisted of Maori’s entire medical record. One of the letters in the file, dated November 18, 2003, written by Scott J. Swanson, M.D., Chief, Division of Thoracic Surgery at Mount Sinai School of Medicine, who was Maori’s treating doctor, states as follows, in pertinent part:
“Mr. Macri presented with metastatic lung cancer one year after being exposed to environmental toxins at the World Trade Center in his work as a policeman . . . The patient is a very healthy gentleman who is a life long nonsmoker who has no other reason to have contracted lung cancer. The exposure at the World Trade Center is a significant and contributing factor for this reason. It is more reasonable than not that this is the cause of his lung cancer. His prognosis is grim given he has Stage 4 *507 lung cancer; less than 5% of patients are cured of this. The average life expectancy is 12-18 months.” (Petitioner’s exhibit 16.)
After listing the medical reports it reviewed, the Medical Board concluded that “the finding of metastatic lung cancer in July 2002, precludes the World Trade Center exposure as the cause of the officer’s disease.” (Respondents’ exhibit 5 1Í13.) The Medical Board denied the petitioner’s request for death benefits, and only approved the application for ODR.
The Medical Board did not give any further reason for its denial.
Medical Board’s Second Review:
After receipt of “new evidence,” the Board of Trustees remanded petitioner’s application to the Medical Board for further review. (Respondents’ exhibit 6 111.) The Medical Board reviewed the petitioner’s application for death benefits for the second time on May 14, 2008. It noted that it reviewed a memorandum from the New York City Law Department on the competent evidence standard in order to rebut a WTC presumption. The presumption under the WTC Bill is that certain illnesses contracted after September 11, 2001 by first responders are related to the exposure to toxins from the WTC sites. The Medical Board stated that “there is substantial literature which quantitates the doubling times of primary pulmonary lung cancers.” (Id. 11 5.) The Medical Board did not expand on this statement nor is the referenced literature in the court record. The Medical Board concluded as follows:
“Based upon the literature and the doubling time of pulmonary cancers, the Medical Board states with a high degree of medical certainty that the events of September 11, 2001 and the subsequent exposure are not the etiology of Officer Macri’s cancer. In other words, the Medical Board with a high degree of certainty states that the primary tumor in the lung cancer pre-existed the events of September 11, 2001. The Medical Board finds that this is competent evidence to rebut the premise of the World Trade Center Bill.” (Id. 1Í1Í 6, 7.)
The Medical Board then reaffirmed its previous decision to deny petitioner’s application for death benefits pursuant to the WTC designation.
*508 Medical Board’s Third Review:
After receipt of “new evidence,” the Board of Trustees remanded petitioner’s application to the Medical Board for further review. (Respondents’ exhibit 7 1Í1.)
The Medical Board noted that it reviewed letters from Dr. Jonathan Schwartz, who was Maori’s treating physician until 2006, and Dr. James Cesaretti, Maori’s radiation oncologist.
Dr. Schwartz wrote a letter, in which he cited a 2007 article written in the New England Journal of Medicine. He stated, in pertinent part:
“This letter is in support of a request that the death of NYPD Officer Frank Macri be considered related to 9-11 (the September 11, 2001 World Trade Center terrorist attack). . . .
“My expertise is in the treatment of cancer, and also in the development of new cancer medications at both early and late stages of drug development.
“Much more remains unknown than known; important decisions are often made based on our best estimates.
“The above notwithstanding, here is what we know:
“-the relationship between exposure to airborne materials at ground zero and multiple, serious chronic illnesses has been well documented; this is especially the case regarding first-responders.
“-the levels of known carcinogens . . . were extremely high in the air at ground zero in the days immediately following . . .
“-Frank Macri developed an aggressive lung cancer in the year following his exposure as a 9-11 first responder. Mr. Macri was not a cigarette smoker, nor was there any history of unusual cancers developing at relatively young ages in his family.” (Petitioner’s exhibit 41.)
Dr. Cesaretti described Macri as the “picture of excellent health.” (Petitioner’s exhibit 42.) He also stated that Maori’s “case from a radiation oncology perspective was unique and it is certainly reasonable to ascribe some causality to his 9/11 exposure.” (Id.)
After receipt of these letters, the Medical Board commented that these letters are based on speculation that the circumstances may have precipitated a “very, very” aggressive form of cancer; however, the doctors provided no hard data. (Respon *509 dents’ exhibit 7 If 2.) It again found that the “known clinical course of deceased Officer Macri’s disease in its advanced stage of metastatic disease found in July 2002 is adequate evidence for rebuttal.” (Id.)
On March 18, 2009, the Medical Board once again denied petitioner’s application for a line-of-duty death benefit pursuant to the WTC Bill.
Thereafter, on July 8, 2009, the Board of Trustees adopted the Medical Board’s recommendation and disapproved petitioner’s application for death benefits. (Minutes of the Board of Trustees meeting; respondents’ exhibit 12.) Although the Board of Trustees voted six to six to upgrade petitioner’s death benefits, in the case of a tie, accidental disability retirement (ADR), or in this case, death benefits, is ultimately denied. (See Matter of City of New York v Schoeck, 294 NY 559 [1945].)
Petitioner then filed this article 78 petition.
Discussion
To meet the criteria for accidental death benefits pursuant to Administrative Code § 13-244, petitioner needs to provide evidence to the Medical Board “proving that the death of such member was the natural and proximate result of an accident sustained while a member and while in the performance of duty at some definite time and place and that such death was not the result of willful negligence.”
This method of applying for death benefits is similar to the two-step process when a member of the police force pursues retirement based on accidental disability. (Administrative Code § 13-252; see Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996].) First, the petitioner must be examined by the Medical Board which determines whether the applicant is physically or mentally incapacitated for duty. The Medical Board is the sole determiner of whether the applicant is injured and whether this disability prevents the applicant from performing his duties. (Id. at 760.) Second, if the applicant is deemed disabled, the Medical Board makes a recommendation to the Board of Trustees whether the disability was the result of a natural and proximate line-of-duty accident.
In an article 78 proceeding challenging the disability determination, the Medical Board’s finding will be sustained unless it lacks a rational basis, or is arbitrary or capricious. (See Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756 [1996], supra.) “Ordinarily, a Medical Board’s disabil *510 ity determination will not be disturbed if the determination is based on substantial evidence. While the quantum of evidence that meets the ‘substantial’ threshold cannot be reduced to a formula, in disability cases the phrase has been construed to require ‘some credible evidence’ ” (id. at 760 [citations omitted]). Credible evidence has been generally defined as “evidence that proceeds from a credible source and reasonably tends to support the proposition for which it is offered . . . [and] must be evidentiary in nature and not merely a conclusion of law, nor mere conjecture or unsupported suspicion.” (Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d 139, 147 [1997] [citations omitted].) When conflicting medical opinions are presented, the Medical Board’s determination takes precedence. (Matter of Borenstein, 88 NY2d at 760.) Where, as here, the determination of the Board of Trustees has resulted in a tie vote, the court may not disturb the final award, “as long as there was any credible evidence of lack of causation before the Board of Trustees.” (Matter of Meyer, 90 NY2d at 145.)
The WTC Bill, Administrative Code § 13-252.1, creates a presumption of accidental death or disability due to certain conditions which arise in police pension fund members who participated in the rescue, recovery or clean-up operations of the World Trade Center attacks. Unlike accidental death or disability benefits, where the burden to show that the member was disabled or died as a result of a work-related injury falls on the petitioner, under the WTC Bill, the burden of causation is on the respondents. The statute provides:
“Notwithstanding any provisions of this code or of any general, special or local law, charter or rule or regulation to the contrary, if any condition or impairment of health is caused by a qualifying World Trade Center condition as defined in section two of the retirement and social security law, it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by such member’s own willful negligence, unless the contrary be proved by competent evidence.” (Administrative Code § 13-252.1 [1] [a].)
There are certain criteria which members must meet before they can apply for benefits under the WTC Bill, such as length of time spent at the site and type of medical condition. Macri, who filled out the proper paperwork before his death, fulfilled *511 all of the criteria to be considered for benefits under the WTC Bill. The member’s eligible beneficiary may collect accidental death benefits pursuant to Administrative Code § 13-244 if the member meets the WTC Bill criteria.
Respondents do not dispute that Macri had met the criteria. However, they conclude that the WTC presumption is rebutted in Maori’s case, since they contend that Maori’s lung cancer preexisted September 11, 2001.
Although no definition has been standardized for what constitutes proof by competent evidence for purposes of rebutting the WTC presumption, a recent New York County Supreme Court case, affirmed by the Appellate Division, First Department, has held that the credible evidence standard is essentially the same. (See Matter of Jefferson v Kelly, 14 Misc 3d 191, 196-197 [Sup Ct, NY County 2006], affd 51 AD3d 536 [2008], citing Matter of Goldman v McGuire, 64 NY2d 1041 [1985].) The court in Matter of Jefferson v Kelly (14 Misc 3d at 196-197) noted, “in order to rebut the presumption, there must be some credible medical evidence in the record on which to base the determination that the (presumed) accidental injury did not cause the disability.”
Applying the above standard to the present facts, respondents have not met their burden to prove by competent evidence that Macri did not develop cancer and subsequently die as a result of the work that he performed at the World Trade Center. First and foremost, respondents cite to unidentified “doubling time” literature which, they admit, is based on a nonresponder population. They attempt, without any credible medical evidence, to compare these unidentified studies to Maori’s situation, despite his different set of facts and letters written on his behalf from his treating doctors, who are current experts in the field. “[M]ere conjecture or unsupported suspicion” does not demonstrate credible evidence. (Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d at 147.)
It is not petitioner’s burden to prove causation, since it is undisputed that Macri is eligible to be considered for benefits under the WTC Bill. Even so, petitioner has submitted letters from Maori’s doctors which provide credible medical evidence that Maori’s cancer was more than likely the result of his exposure to toxins at the World Trade Center site. Petitioner also alleges that, although she requested copies of the literature respondents relied upon, she has never received any.
Accordingly, as respondents have not met their burden to demonstrate that Maori’s death was not caused by his assign *512 ment to the World Trade Center sites, petitioner is entitled to receive accidental death benefits pursuant to his undisputed eligibility under the WTC Bill.
Conclusion
In view of the above, it is ordered and adjudged that the petition is granted and respondents’ July 8, 2009 determination to disapprove Maori’s death as a line-of-duty World Trade Center death is vacated and annulled, and the respondents are directed to grant petitioner death benefits in accordance with the foregoing.