[935 NYS2d 295]

In the Matter of Nilda Macri, Respondent, v Raymond W. Kelly, as Police Commissioner of the City of New York, et al., Appellants.

First Department, December 27, 2011

### APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Keith M. Snow, Paul Rephen* and *Inga Van Eysden* of counsel), for appellants.

*Michael T. Murray*, New York City (*Christopher J. McGrath* of counsel), for respondent.

### OPINION OF THE COURT

SWEENY, J.

The issue before us is whether respondents produced credible evidence to rebut the World Trade Center presumption (Administrative Code of City of NY § 13-252.1 [1] [a]) accorded to petitioner's claim for accidental line-of-duty death benefits. We hold that, in this case, they did not.

Petitioner's decedent Frank Macri was appointed as a New York City police officer on February 1, 1995. He was a first responder during the terrorist attacks on September 11, 2001. When the first tower collapsed, building debris struck Macri, knocking him to the ground and causing lacerations to his left arm, right leg, and both corneas. He inhaled significant quantities of dust and smoke caused by the collapsing building. Macri received treatment for his injuries that day at New York University Medical Center. As part of that treatment, he underwent a chest X ray that revealed no evidence of cancer in his lungs.

Subsequent to September 11, Macri performed approximately 350 hours of duty in the rescue, recovery and cleanup operations after the attack. He worked at Ground Zero until October 1, 2001, and at Fresh Kills Landfill from November 1, 2001 to early January 2002.

On July 25, 2002, Macri visited orthopedic surgeon Herbert Jalens complaining of a "sudden onset of aching pain in his left thigh, starting about two or three weeks earlier." Jalens' examination report listed Macri as a 46-year-old nonsmoker who was "muscled and pumps iron." Jalens reported that Macri advised him of a similar episode in the spring "when he woke up one day with pain in the buttock and thigh." Jalens referred Macri for an MRI of his lumbrosacral spine.

Within days, Macri underwent a series of diagnostic tests, including an MRI and CT scan of his lumbar spine, a whole body bone scan, a biopsy of his sacrum and a whole body PET scan. In August 2002, Macri was diagnosed with a malignant lytic sacral lesion and lung carcinoma.

Macri underwent treatment for this condition but an MRI conducted on December 23, 2003 revealed at least three metastases to his brain. By January 2005, Macri's "non-small cell lung cancer" had metastasized to his brain, liver, lungs and bones, finally taking his life on September 2, 2007.

On August 22, 2002, an application for ordinary disability retirement (ODR) was submitted on Macri's behalf. On March 8, 2006, Macri filed a form known as a Notice of Participation in the World Trade Center Rescue, Recovery, or Clean-up Operations. On October 11, 2007, petitioner, Macri's widow, applied for World Trade Center (WTC) accidental line-of-duty combat death benefits, citing cancer as the qualifying physical condition.

On October 31, 2007, the Medical Board Police Pension Fund Article II (Medical Board) recommended approval of Macri's application for ODR and disapproval of petitioner's WTC line-of-duty application. The Medical Board found "that the findings of metastatic lung cancer in July 2002 precludes the World Trade Center exposure as the cause of the officer's disease." This decision was based, inter alia, on Dr. Jalens' July 2002 report, as well the radiologist reports from Macri's MRI and CT scans, also taken in July 2002, which contained findings of "abnormal bone density" and a "likely . . . malignant lesion" in Macri's left sacral vertebral body. The Medical Board also considered Macri's medical records, pathology and radiation reports, the 2004 report of Macri's brain surgeon as well as the March 2004 brain MRI and CT scans indicating four metastatic lesions in his brain.

On April 9, 2008, the Police Pension Fund Board of Trustees (PPF Board) held its first session and denied petitioner's application for WTC line-of-duty benefits. In its decision, the Board stated: "We do believe that the Medical Board's report rebuts the [WTC] presumption," pointing to the Medical Board's finding that metastatic lung cancer in July 2002 indicated a cancer existing prior to 9/11, which rebutted the presumption that exposure at the WTC was the cause of the cancer.

Petitioner's counsel asked for a Medical Board reconsideration, arguing that the Medical Board's finding of no causal connection between the disability and WTC exposure was not sufficient to rebut the WTC presumption. The PPF Board granted counsel's request and remanded the matter to the Medical Board to consider "New Evidence and as per Verbatim minutes."

On May 14, 2008, the Medical Board issued a memorandum adhering to its prior determination. The Medical Board noted that "there is substantial literature which quantitates the doubling times of primary pulmonary lung cancers," and that based upon this literature, and Macri's etiology of presenting with lung cancer some 9 to 10 months after September 11, 2001, the cancer was preexisting and therefore was not the result of WTC exposure. The Medical Board held that "this [i.e., the aforesaid unidentified literature] is competent evidence to rebut the premise of the World Trade Center Bill."

On November 12, 2008, the PPF Board held its second session. Petitioner submitted a letter from Macri's treating oncologist, stating that lung cancer was rare among young nonsmokers and that, while it was impossible to state with absolute

certainty Macri's lung cancer was related to his work at Ground Zero, the "documented presence of high levels of carcinogenic substances in air/dust from the Ground Zero site, and increasing reports of malignancies in the group of first-responders all suggest a very plausible association" between Macri's work and the development of his lung cancer. Indeed, this oncologist opined that it was more reasonable than not that Macri's exposure at WTC was the cause of his lung cancer. Petitioner also submitted an e-mail from Macri's radiation oncologist which stated Macri's diagnosis with stage 4 cancer at "a young age could be ascribed to 9/11 type exposure." The PPF Board again remanded this case to the Medical Board to consider this additional evidence.

On March 18, 2009, the Medical Board issued a memorandum, which once again adhered to its prior recommendations. The Medical Board stated that it was "not aware of literature in the responder population" relative to the incidence of cancer but did not "find that the only rebuttable evidence that can be presented would be based on data from the responder population." The Medical Board discounted, without specifically addressing, the letters from Macri's oncologists, stating those letters were merely an "attempt to raise a 'specter of doubt' as to the etiology being caused by the World Trade Center exposure, but f[ound] that the known clinical course of deceased Officer Macri's disease in its advanced stage of metastatic disease found in July 2002 is adequate evidence for rebuttal."

On July 8, 2009, the PPF Board cast six votes in favor of designating Macri's death as a WTC line-of-duty death and six votes against, thus denying the application for line-of-duty benefits.

Petitioner brought an article 78 proceeding seeking to annul the PPF Board's determination and compel respondents to designate Macri's death as a WTC line-of-duty combat death. Noting that "no definition has been standardized for what constitutes proof by competent evidence for purposes of rebutting the WTC presumption," the court determined that competent evidence was essentially the same as credible evidence (28 Misc 3d 504, 511 [2010]). Applying that standard, Supreme Court found that respondents had not met their burden of showing that Macri's medical condition was not caused by the performance of his duties after the 9/11 terrorist attacks. The court particularly faulted the Medical Board's reference to "unidentified 'doubling time' literature," which was admittedly based on a nonre-

sponder population, and which was never provided to petitioner, who had requested it. The court faulted the Medical Board's "attempt, without any credible medical evidence, to compare these unidentified studies to Macri's situation, despite his different set of facts and letters written on his behalf from his treating doctors, who are current experts in the field." Since the PPF Board relied unquestionably on the Medical Board's findings in arriving at its determination, the court granted the petition.

■ Although the burden of proof with respect to demonstrating entitlement to benefits usually rests with the claimant at the administrative level, the Legislature has provided a presumption in favor of accidental line-of-duty causation involving first responders, including personnel of the New York City Police Department, who performed recovery or other duties at the World Trade Center site, Fresh Kills Landfill, temporary morgues and other specified locations after the 9/11 attacks. This WTC presumption places on the respondents the initial burden of demonstrating that a petitioner with a qualifying condition is not entitled to benefits, and is codified in Administrative Code § 13-252.1 (1) (a) as follows:

> "Notwithstanding any provisions of this code or of any general, special or local law, charter or rule or regulation to the contrary, if any condition or impairment of health is caused by a qualifying World Trade Center condition as defined in section two of the retirement and social security law, it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by such member's own willful negligence, unless the contrary be proved by competent evidence."

Administrative Code § 13-252.1 (4) further provides that if a member who meets the criteria set forth above dies in active service from a

> "qualifying World Trade Center condition . . . caused by such member's participation in the World Trade Center rescue, recovery or cleanup operations . . . then unless the contrary be proven by competent evidence, such member shall be deemed to have died as a natural and proximate result of an accident sustained in the performance of duty."

Retirement and Social Security Law § 2 (36) provides the time frames the claimant must have performed duties at the specified locations and the qualifying physical and psychological conditions which resulted from those duties that give rise to his or her claim. Section 2 (36) (c) (v) specifically defines cancer as a "qualifying physical condition."

Generally, the standard of review by which a reviewing court assesses the PPF Board's administrative determination is either the arbitrary and capricious standard (CPLR 7803 [3]) or the substantial evidence standard (CPLR 7803 [4]; *see Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II*, 60 NY2d 347, 351 [1983]). Where, as here, however, the Board's decision is reached as a result of a tie vote, the standard of judicial review is necessarily different. In such circumstances, "the reviewing court may not set aside the Board of Trustees' denial of accidental disability retirement resulting from such a tie vote unless 'it can be determined as matter of law on the record that the disability was the natural and proximate result of a service-related accident' " (*Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139, 145 [1997], quoting *Canfora*, 60 NY2d at 352; *see also Matter of Polak v Board of Trustees of N.Y. City Police Dept. Art. II Pension Fund*, 188 AD2d 341 [1992], *lv denied* 81 NY2d 706 [1993]). In cases where there has been a tie vote, "the reviewing court may only disturb the final award by finding causation established as a matter of law, [and] as long as there was any credible evidence of lack of causation before the Board of Trustees, its determination must stand" (*Meyer* at 145; *see Canfora* at 351).

This case therefore turns on the question of whether there was "credible evidence" supporting the PPF Board's determination with respect to lack of causation between the claimant's disability and his performance of duty at Ground Zero or other specified 9/11 related sites.

While there is no precise definition of what constitutes "credible evidence" sufficient to rebut the WTC presumption, there are certain essential parameters that must be met. Credible evidence must "proceed[ ] from a credible source and reasonably tends to support the proposition for which it is offered" and "must be evidentiary in nature and not merely a conclusion of law, nor mere conjecture or unsupported suspicion" (*Meyer*, 90 NY2d at 147). For a reviewing court to uphold a determination of no causation, the decision must be based "on objective medi-

cal evidence or a rational, fact-based medical explanation" (*id.*). The facts of each case must therefore play a significant role in this determination.

▮ Here, in addition to Macri's identified medical records, the Medical Board relied on unidentified "doubling time" literature which was not based on the responder population to support its conclusion that his cancer was a preexisting condition and not WTC related. However, that conclusion is not supported by credible evidence.

There is no question that Macri's temporal duration at Ground Zero and Fresh Kills far exceeded the minimum 40 hours required by Retirement and Social Security Law § 2 (36) (g) to invoke the WTC presumption. Moreover, there is nothing in the medical records, other than the unidentified "doubling time" literature, to indicate that his cancer preexisted 9/11. Indeed, the chest X ray taken on 9/11 showed no indication of any pulmonary cancer. While it is true that Macri's cancer was a highly aggressive form of cancer, that fact, standing alone, does not rebut the WTC presumption. Indeed, Macri's oncologists stated that his diagnosis of stage 4 cancer "at such a young age could be ascribed to 9/11 type exposure," and that the rapid growth and spread of the cancer made it more reasonable than not, given his nonsmoker status and health prior to 9/11, that the cancer was contracted because of his exposure to the high levels of carcinogens known to be present at Ground Zero. The Medical Board dismissed without addressing this evidence and did not examine the basis for the conclusion that exposure to the known toxins at the WTC site was the proximate cause of Macri's admittedly unusually aggressive cancer, a significant omission which undermines its conclusion (*see Matter of Fernandez v Board of Trustees of N.Y. Fire Dept. Pension Fund, Subchapter 2*, 81 AD3d 950, 952 [2011]).

Respondents' reliance on our decision in *Matter of Maldonado v Kelly* (86 AD3d 516 [2011]) is misplaced. There, the petitioner evidenced symptoms prior to 9/11 which later turned out to be a sarcoma, clearly evidence of a preexisting condition. The petitioner admitted his cancer preexisted 9/11. However, having worked the minimum statutory 40 hours at ground zero, he applied for WTC line-of-duty benefits, arguing that this work exacerbated his condition. Significantly, the petitioner's own medical providers essentially acknowledged that his time at the WTC site "suggests" that, although the exposure was not the etiology of the petitioner's cancer, it "does not rule out the possibility"

that such exposure aggravated his cancer. The petitioner's doctor did not "even state that, in his medical opinion, it was more likely than not that the rapid growth of the tumor was related to petitioner's work at the World Trade Center site" (*id*. at 520). The PPF Board, based on the Medical Board's determination that there was no causal connection between the petitioner's cancer and his work at the WTC site denied his claim, finding that the WTC presumption was rebutted on the basis of the medical evidence submitted.

In affirming Supreme Court's dismissal of the petitioner's article 78 proceeding, we specifically cautioned:

> "This decision should not be viewed as a diluting of the World Trade Center presumption, which was enacted in recognition of the enormous sacrifice made by those public employees who assisted in the recovery from the World Trade Center attacks. Rather, *it reflects the unique facts of this case,* where not even petitioner's own physician could offer more than a wholly equivocal, speculative opinion on causation" (*id*. [emphasis added]).

In the case before us, we have the opposite situation. There is no evidence to support the Medical Board's conclusion, adopted by the PPF Board, that Macri's cancer was preexisting. Indeed, there is evidence that just the opposite was the case. Unlike *Maldonado,* Macri's time at various WTC sites was extensive. His oncologists provided a strong, clearly articulated, experience-based medical opinion, finding that the etiology of his cancer led to the conclusion that it was more reasonable than not that his cancer was the result of his duty at WTC sites. This opinion was not addressed by the Medical Board, and, as in *Matter of Fernandez,* undermined their conclusions.

This case is closer to our decision in *Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II* (86 AD3d 427 [2011]). There, the petitioner, who had worked in excess of 65 hours at various WTC sites, was diagnosed with rectal cancer in October 2002. She applied for line-of-duty benefits, claiming her cancer was a result of her WTC duties. The Medical Board concluded that, based on her prior history of ulcerative colitis and surgery to correct this condition almost 20 years prior to her diagnosis, and the size of the petitioner's cancer mass on an October 2002 CT scan, the cancer was a condition that preexisted 9/11. The PPF Board agreed and denied her application.

The petitioner brought an article 78 proceeding to overturn that determination. In finding that the PPF Board failed to adduce credible evidence sufficient to overcome the WTC presumption, Supreme Court specifically cited the Medical Board's conclusory statement that "clinical data," not otherwise specified, supported the Medical Board's conclusion that the size of petitioner's cancerous mass indicated a pre-9/11 origin. Since this "clinical data" was not part of the administrative record, the court found the conclusions of the PPF and Medical Boards did not meet the credible evidence standard (see 2010 NY Slip Op 30700[U] [2010]).

We affirmed, finding that there was

> "no credible evidence to support the Medical Board's assertion that the size of tumor meant it began growing before September 11, 2001, and thus could not have been the result of or exacerbated by exposure. Nor [was] there credible evidence to support the Medical Board's conclusion that petitioner's cancer was caused by her episode of ulcerative colitis and the corrective surgery, which occurred nearly 20 years prior to the onset of the cancer" (86 AD3d at 427-428).

Here, we find the same conclusory reliance on undisclosed literature that we determined did not constitute credible evidence in *Bitchatchi*. We see no reason to not find similarly in this case.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Jane S. Solomon, J.), entered May 10, 2010, which granted this article 78 petition seeking, inter alia, to annul respondents' decision to disapprove the designation of the death of petitioner's husband as a line-of-duty World Trade Center death, and to compel such designation, should be affirmed, without costs.

GONZALEZ, P.J., TOM and RENWICK, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered May 10, 2010, affirmed, without costs.