[982 NE2d 600, 958 NYS2d 680]

In the Matter of KAREN BITCHATCHI, Respondent, v BOARD OF TRUSTEES OF THE NEW YORK CITY POLICE DEPARTMENT PENSION FUND, ARTICLE II, Appellant.

In the Matter of EDDIE MALDONADO, Appellant, v RAYMOND KELLY, as Police Commissioner of the City of New York and as Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Respondents.

In the Matter of NILDA MACRI, Respondent, v RAYMOND W. KELLY, as Police Commissioner of the City of New York and as Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Appellants.

Argued and submitted November 13, 2012; decided December 13, 2012

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Paul T. Rephen* and *Keith M. Snow* of counsel), for appellant in the first above-entitled proceeding. I. The lower courts misapplied the legal standard for reviewing public pension disability determinations and statutory presumptions. (*Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756; *Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139; *Matter of Archul v Board of Trustees of N.Y. City Fire Dept., Art. 1B Pension Fund*, 93 AD2d

716, 60 NY2d 567; *Matter of Christian v New York City Employees' Retirement Sys.*, 83 AD2d 507, 56 NY2d 841; *Denio v State of New York*, 7 NY3d 159; *Matter of Nerney v New York State Policemen's & Firemen's Retirement Sys.*, 156 AD2d 775, 75 NY2d 710; *Matter of Helmer v New York State & Local Employees' Retirement Sys.*, 305 AD2d 949; *Matter of Kelly v Kelly*, 82 AD3d 544, 17 NY3d 705; *Matter of Jefferson v Kelly*, 14 Misc 3d 191, 51 AD3d 536; *Matter of Mulet v Kelly*, 49 AD3d 336.) II. The lower courts improperly weighed medical evidence and incorrectly found that petitioner is entitled to accidental disability retirement as a matter of law. (*Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II*, 90 AD2d 751, 60 NY2d 347; *Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139; *Matter of Wesarg v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 246 AD2d 601; *Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756; *Matter of Callaghan v Bratton*, 253 AD2d 390; *Matter of Brady v City of New York*, 22 NY2d 601; *Matter of Josey v New York City Police Dept.*, 50 AD3d 393.)

*Rosemary Carroll*, Clermont, for respondent in the first above-entitled proceeding. I. The judgment should be affirmed because respondent failed to adduce competent evidence to rebut the statutory presumption that petitioner's disabling cancer was caused by exposure to toxins at Ground Zero. (*Matter of Evans v City of New York*, 145 AD2d 361; *Matter of Jefferson v Kelly*, 14 Misc 3d 191, 51 AD3d 536; *Matter of Mulet v Kelly*, 49 AD3d 336; *Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139; *Matter of Cusick v Kerik*, 305 AD2d 247; *Matter of Brady v City of New York*, 22 NY2d 601; *Matter of Rodriguez v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 3 AD3d 501; *Matter of Kiess v Kelly*, 75 AD3d 416; *Matter of Macri v Kelly*, 92 AD3d 53; *Matter of Goldman v McGuire*, 64 NY2d 1041.) II. Respondent failed to apply the applicable rule of law on causation and petitioner is entitled to accidental disability retirement as a matter of law. (*Matter of Tobin v Steisel*, 64 NY2d 254; *Matter of Petrella v Board of Trustees of Police Pension Fund*, 141 AD2d 361.)

*Law Offices of Chet Lukaszewski, P.C.*, Lake Success (*Chester P. Lukaszewski* of counsel), for appellant in the second above-entitled proceeding. I. The First Department committed errors in law and in fact and misinterpreted the World Trade Center law and thereby set a precedent which nullifies the law and its

presumption. (*Santangelo v State of New York*, 71 NY2d 393; *Matter of O'Marah v Levitt*, 35 NY2d 593; *Matter of Tobin v Steisel*, 64 NY2d 254; *Matter of Jefferson v Kelly*, 51 AD3d 536; *Matter of Claudio v Kelly*, 84 AD3d 667; *Matter of Kelly v Kelly*, 82 AD3d 544; *Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756; *Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139; *Matter of Heintz v Brown*, 80 NY2d 998; *People v Ryan*, 274 NY 149.) II. Court action granting petitioner a World Trade Center accidental disability retirement pension is warranted or, at least, remanding his application for further consideration in keeping with the decision herein. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II*, 90 AD2d 751, 60 NY2d 347; *Matter of VR Equities v New York City Conciliation & Appeals Bd.*, 118 AD2d 459; *Roth v Board of Trustees of Teachers' Retirement Sys. of City of N.Y.*, 66 AD2d 664; *Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756; *Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139; *Matter of Brady v City of New York*, 22 NY2d 601; *Matter of Belnavis v Board of Trustees of N.Y. City Fire Dept., Art. 1B Pension Sys.*, 84 AD2d 244; *Pamlanye v McGuire*, 111 AD2d 721; *Matter of Perkins v Board of Trustees of N.Y. Fire Dept. Art. 1-B Pension Fund*, 59 AD2d 696.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Paul T. Rephen* and *Inga Van Eysden* of counsel), for respondents in the second above-entitled proceeding. Petitioner failed to meet his burden of demonstrating that his preexisting cancer was aggravated by his World Trade Center (WTC) work, and even if the WTC presumption applies, the Medical Board's determination that petitioner's cancer was not caused or aggravated by his WTC work was based on credible evidence and should be upheld. (*Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756; *Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139; *Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II*, 60 NY2d 347; *Matter of Archul v Board of Trustees of N.Y. City Fire Dept., Art. 1B Pension Fund*, 93 AD2d 716, 60 NY2d 567; *Matter of Christian v New York City Employees' Retirement Sys.*, 83 AD2d 507, 56 NY2d 841; *Matter of Tobin v Steisel*, 64 NY2d 254; *Matter of Jefferson v Kelly*, 14 Misc 3d 191, 51 AD3d 536; *Matter of Lahm*

*v Bloomberg*, 29 AD3d 461; *Matter of Whitton v Spinnato*, 143 AD2d 274; *Matter of Bartsch v Board of Trustees of N.Y. City Fire Dept. Art. 1B Pension Fund*, 142 AD2d 577.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Paul T. Rephen* and *Keith M. Snow* of counsel), for appellants in the third above-entitled proceeding. The determination by the Medical Board of the Police Pension Fund that Officer Macri's lung cancer predated 9/11 was based on credible evidence, and therefore, the presumption that it was the consequence of his service at that time was properly rebutted. To the extent that petitioner offered conflicting medical evidence, the resolution of that conflict rested with the Board of Trustees of the Pension Fund and not the courts. (*Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756; *Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139; *Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II*, 60 NY2d 347; *Matter of Archul v Board of Trustees of N.Y. City Fire Dept., Art. 1B Pension Fund*, 93 AD2d 716, 60 NY2d 567; *Matter of Christian v New York City Employees' Retirement Sys.*, 83 AD2d 507, 56 NY2d 841; *Matter of Kelly v Kelly*, 82 AD3d 544, 17 NY3d 705; *Matter of Jefferson v Kelly*, 14 Misc 3d 191, 51 AD3d 536; *Denio v State of New York*, 7 NY3d 159; *Matter of Nerney v New York State Policemen's & Firemen's Retirement Sys.*, 156 AD2d 775, 75 NY2d 710; *Matter of Helmer v New York State & Local Employees' Retirement Sys.*, 305 AD2d 949.)

*Dechert LLP*, New York City (*James M. McGuire, Edward A. McDonald* and *Matthew L. Mazur* of counsel), for respondent in the third above-entitled proceeding. I. No competent evidence rebutted the World Trade Center presumption. (*Matter of Brady v City of New York*, 22 NY2d 601; *Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756; *Matter of Claudio v Kelly*, 84 AD3d 667; *United States v Stanchich*, 550 F2d 1294; *Matter of Fernandez v Board of Trustees of N.Y. Fire Dept. Pension Fund, Subchapter 2*, 81 AD3d 950; *Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 90 NY2d 139; *Matter of Goldman v McGuire*, 101 AD2d 768, 64 NY2d 1041; *Matter of Wahl v Board of Trustees of N.Y. City Fire Dept.*, 89 NY2d 1065; *Matter of Liston v City of New York*, 161 AD2d 491; *Matter of Bennett v Board of Trustees of Police Pension Fund of City of N.Y.*, 20 AD2d 522, 16 NY2d 562; *Romano v Stanley*, 90 NY2d 444.) II. The Medical Board's determination did not rebut the World Trade Center presumption

under the *Tobin* rule. (*Matter of Tobin v Steisel*, 64 NY2d 254; *Matter of Meyer v McGuire*, 64 NY2d 1152; *Matter of Dement v Kelly*, 97 AD3d 223; *Matter of Britt v DiNapoli*, 91 AD3d 1102; *Matter of Jones v Board of Trustees of N.Y. Fire Dept. Art. 1-B Pension Fund*, 123 AD2d 628; *Edmond v International Bus. Machs. Corp.*, 91 NY2d 949.) III. Because petitioner is entitled to accidental death benefits as a matter of law, a remand to the Medical Board is not an appropriate remedy. (*Matter of McCambridge v McGuire*, 62 NY2d 563; *Matter of Sailer v McGuire*, 114 AD2d 334; *Matter of Dement v Kelly*, 97 AD3d 223; *Matter of City of New York v Schoeck*, 294 NY 559; *Matter of Brady v City of New York*, 22 NY2d 601; *Matter of Josey v New York City Police Dept.*, 50 AD3d 393.)

**OPINION OF THE COURT**

GRAFFEO, J.

Each of these appeals involves a police officer who responded to provide assistance at the World Trade Center following the September 11, 2001 attacks. Two officers seek accidental disability retirement benefits and the surviving spouse of another officer makes a claim for line-of-duty death benefits. Central to all three CPLR article 78 proceedings is the application of the statutory World Trade Center (WTC) presumption (*see* Administrative Code of City of NY § 13-252.1 [1] [a]), under which an officer's disability or death as a result of a qualifying condition is presumed to be caused by his or her exposure at the WTC site for purposes of benefit upgrades. The common issue presented is whether the pension fund respondents produced competent evidence to rebut the WTC presumption accorded to petitioners' claims. We hold that respondents did not meet their burden of disproving that the officers' disabilities or death were causally related to their work at the World Trade Center and related sites. We therefore affirm in *Bitchatchi* and *Macri* and reverse in *Maldonado*.

I.

Police officers employed by the New York City Police Department (NYPD) who become disabled may apply for ordinary disability retirement (ODR) benefits or accidental disability retirement (ADR) benefits. ODR benefits, generally comprised of a taxable pension of one half of the officer's salary, are payable if the officer is "physically or mentally incapacitated for the performance of duty and ought to be retired" (Administrative Code of City of NY § 13-251). ADR benefits are more generous—a

tax-free pension of three quarters of the officer's salary—but eligibility requires an additional showing that the officer's disability is the "natural and proximate result of an accidental injury received in . . . city-service" (Administrative Code of City of NY § 13-252). If a police officer dies as the result of a work-related accident, the officer's beneficiaries may recover line-of-duty death benefits, generally equating to the officer's full salary (*see* Administrative Code of City of NY § 13-244; General Municipal Law § 208-f).

A claimant filing for ADR benefits ordinarily has the burden of proving causation in an administrative proceeding. But as part of the legislature's response to the World Trade Center tragedy, a new statute was enacted creating a presumption in favor of ADR benefits for police officers who performed rescue, recovery or cleanup operations at specified locations, including the World Trade Center and the Fresh Kills Landfill. Under the WTC presumption, the pension fund bears the initial burden of proving that a claimant's qualifying condition was not caused by the hazards encountered at the WTC site:

> "Notwithstanding any provisions of this code or of any general, special or local law, charter or rule or regulation to the contrary, if any condition or impairment of health is caused by a qualifying World Trade Center condition as defined in section two of the retirement and social security law, it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by such member's own willful negligence, *unless the contrary be proved by competent evidence*" (Administrative Code of City of NY § 13-252.1 [1] [a] [emphasis added]).[1]

To take advantage of the presumption, a claimant must have participated in operations at one of the enumerated locations for "any period of time within the forty-eight hours after the first airplane hit the towers" or "a total of forty hours accumulated any time between September eleventh, two thousand

---

**1.** Analogous provisions extend the WTC presumption to other classes of first responders (*see e.g.* Administrative Code of City of NY § 13-353.1 [firefighters]; Retirement and Social Security Law § 363-bb [h] [state police]; Retirement and Social Security Law § 605-b [d] [sanitation workers]). The presumption also applies where a police officer later dies and death benefits are sought (*see* Administrative Code of City of NY § 13-252.1 [4]).

one and September twelfth, two thousand two" (Retirement and Social Security Law § 2 [36] [g]). There is no dispute that all of the officers in these appeals fulfilled this requirement. A claimant must also suffer from a statutorily defined qualifying condition, including "new onset diseases resulting from exposure as such diseases occur in the future including cancer" (Retirement and Social Security Law § 2 [36] [c] [v]). Whether the officers' medical conditions qualified for the enhanced benefits is contested by the pension fund respondents in these three proceedings.

Against this statutory backdrop, we turn to the facts and procedural history underlying the appeals before us.

## II.

### Bitchatchi

On September 11, 2001, following the terrorist attacks on the World Trade Center, petitioner Karen Bitchatchi, a police officer with the NYPD, participated in rescue and recovery operations at Ground Zero. In the ensuing days, she logged over 60 hours of work at the site. About a year later, petitioner discovered a cyst near her rectum and a biopsy revealed that she had rectal cancer.

Petitioner applied for ADR benefits based on her service at the WTC site. The Medical Board of the New York City Police Department Pension Fund, Article II (the Medical Board) recommended disapproval, stating that the "causal factor" of the cancer was not exposure at the WTC location; instead it was petitioner's prior ulcerative colitis, a condition that had been surgically addressed about 20 years earlier. To refute this conclusion, petitioner submitted two letters from her oncologist, Dr. Martin Oster, who opined that "her rectal cancer was not related to her ulcerative colitis . . . but rather related to her toxic exposures at the WTC site." Dr. Oster explained that his conclusion was supported by the "two hit" hypothesis, under which "more than one mutational event is needed to induce cancer, in this case, the two events being colitis followed by exposure to carcinogens at the 9/11 site." The Medical Board considered Dr. Oster's evidence but reaffirmed its original recommendation to deny ADR benefits. Respondent Board of Trustees of the New York City Police Pension Fund, Article II

(the Board of Trustees) upheld the recommendation by a tie vote, thus awarding petitioner the lesser ODR benefits.[2]

In petitioner's CPLR article 78 proceeding challenging the Board of Trustees' denial of her ADR benefits, Supreme Court granted the petition to the extent of remanding the matter to the Board for reconsideration. On remand, the Medical Board again decided that petitioner's cancer was not causally related to the WTC site for two reasons. First, it cited a 2009 medical journal article to draw a correlation between petitioner's ulcerative colitis and her cancer. Second, it referenced "clinical data" regarding the growth rates of tumors and found it "highly likely" that the two-centimeter mass discovered in October 2002 was present prior to September 11, 2001. The Board of Trustees subsequently rejected petitioner's ADR application by a tie vote.

Petitioner brought another article 78 proceeding for judicial review of the Board of Trustees' determination. Supreme Court granted the petition, annulled the Board of Trustees' decision and held that petitioner was entitled to ADR benefits as a matter of law (2010 NY Slip Op 30700[U] [2010]). The court found that the Medical Board failed to adduce competent evidence to overcome the statutory presumption that petitioner's cancer was caused by her activities at the WTC site. The Appellate Division affirmed (86 AD3d 427 [1st Dept 2011]). We granted the Board of Trustees leave to appeal (18 NY3d 807 [2012]).

### *Macri*

Frank Macri, an NYPD police officer, was one of the first responders at the World Trade Center on September 11, 2001 and was on site when the first tower fell. Later that day, he received treatment for his injuries, which included multiple lacerations and smoke inhalation. A chest X ray taken at that time revealed no evidence of lung cancer. Over the next several months, Macri spent about 350 hours participating in the massive recovery and cleanup effort at both Ground Zero and the Fresh Kills Landfill. In July 2002, he sought treatment from an orthopedist for the sudden onset of pain in his back and thigh. The following month, Macri was diagnosed with lung cancer, which had metastasized to his sacrum. Despite years of treatment, the cancer spread, taking Macri's life in 2007.

---

**2.** It is a "time-honored procedural practice" that a deadlock by the Board of Trustees on the issue of causation results in the denial of ADR benefits in favor of ODR benefits (*see Matter of Walsh v Scoppetta*, 18 NY3d 850, 852 [2011] [internal quotation marks and citation omitted]).

Macri's wife, petitioner Nilda Macri, submitted an application for accidental line-of-duty death benefits based on Macri's service at the WTC and Fresh Kills Landfill sites. The Medical Board recommended disapproval, explaining that the discovery of metastatic lung cancer in the summer of 2002 precluded WTC exposure as the cause of Macri's cancer. On remand from the Board of Trustees, the Medical Board reaffirmed its prior determination. "[W]ith a high degree of certainty," the Medical Board stated that the lung cancer preexisted the events of September 11, 2001, noting that there was "substantial literature" quantitating the "doubling times" of primary pulmonary lung cancers.

In response, petitioner submitted statements from her husband's doctors to the Board of Trustees. Macri's treating oncologist, Dr. Jonathan Schwartz, opined that lung cancer was rare among young nonsmokers, like Macri, and that the "documented presence at high levels of carcinogenic substances in air/dust from the ground zero site, and increasing reports of malignancies in the group of first-responders all suggest a very plausible association" between his work and the onset of his lung cancer. In another submission, Macri's radiation oncologist, Dr. Jamie Cesaretti, indicated that the diagnosis of stage four cancer at "such a young age could be ascribed to 9/11 type exposure." Macri's surgeon, Dr. Scott Swanson, likewise asserted that it was "more reasonable than not" that Macri's WTC exposure precipitated his lung cancer, particularly since he was otherwise a "very healthy gentleman who is a life long nonsmoker." Based on this new evidence, the Board of Trustees remanded the case to the Medical Board for reconsideration.

The Medical Board adhered to its original recommendation to disapprove ADR benefits. It reiterated its reliance on unspecified "literature" analyzing lung cancer doubling times and stated that "copious data" of survival times, based on the stage of Macri's cancer when discovered, supported its conclusion that he had lung cancer before September 11, 2001. The Medical Board discounted the evidence offered by Macri's doctors, characterizing the submissions as mere attempts to raise a "specter of doubt" as to the etiology of his cancer. By a tie vote, the Board of Trustees denied WTC line-of-duty death benefits in favor of ODR survivor's benefits.

Petitioner brought this article 78 proceeding challenging the Board of Trustees' determination. Supreme Court granted the petition, annulled the determination and ordered the Board of

Trustees to award petitioner WTC death benefits (28 Misc 3d 504 [Sup Ct, NY County 2010]). The court concluded that the Board of Trustees' reliance on unspecified studies to establish that Macri's cancer predated and was not caused by his WTC exposure was insufficient to rebut the statutory presumption that his cancer was WTC-related. The Appellate Division affirmed (92 AD3d 53 [1st Dept 2011]). We granted leave to appeal to the Board of Trustees and Raymond Kelly, as Police Commissioner of the City of New York and Chairman of the Board of Trustees (collectively, the Board of Trustees) (18 NY3d 810 [2012]).

## *Maldonado*

Beginning on September 12, 2001, petitioner Eddie Maldonado, an NYPD police officer, spent more than 40 hours working in connection with the recovery efforts at the WTC site. Prior to these WTC activities, in the summer of 2001, he noticed what he described as a "pulling sensation" in his left upper leg and, just prior to September 11th, he felt a walnut-sized lump in his left thigh. The mass grew to the size of a softball by November 2001, when a biopsy confirmed that it was cancerous.

Petitioner filed an application for ADR benefits predicated on his work at the WTC site. The Medical Board recommended disapproval because it found that "the proximity of the diagnosis of the disease to the September 11, 2001 World Trade Center exposure is competent evidence that the exposure was not the etiology of the sarcoma." Petitioner's oncologist, Dr. Max Sung, responded that there was a "possibility" that the WTC exposure "stimulated" and "accelerated" the growth of petitioner's tumor. The Medical Board rejected Dr. Sung's evidence as speculative and reaffirmed its previous decision. The Board of Trustees, by a tie vote, denied petitioner's application for ADR benefits and awarded him ODR benefits.

In his article 78 proceeding seeking to annul the Board of Trustees' denial of ADR benefits, petitioner urged that his cancer was aggravated by his exposure to the toxins at the WTC site. Supreme Court denied the petition and dismissed the proceeding. The Appellate Division affirmed, holding that "credible evidence supports the Medical Board's determination, adopted by the Board of Trustees, that the aggravation of petitioner's cancer was not caused by the World Trade Center site conditions" (86 AD3d 516, 520 [1st Dept 2011]). The Court therefore concluded that "respondents rebutted the World Trade

Center presumption" (*id.* at 520-521). We granted petitioner leave to appeal (18 NY3d 808 [2012]).

## III.

Addressing *Bitchatchi* and *Macri* first, the Board of Trustees contends that the courts below erred in annulling its determinations to deny ADR and line-of-duty death benefits. It acknowledges that the WTC presumption applies to these two cases but asserts that the Medical Board's findings that the police officers' cancers were not etiologically related to their WTC exposures were rationally based and met the competent evidence standard necessary to rebut the statutory presumption. The Board of Trustees submits that the courts below improperly weighed the evidence and substituted their own judgment for that of the Board. Petitioners respond that the Board of Trustees failed to adduce competent evidence to rebut the presumption and, as a result, they were properly awarded the benefit upgrades.

Although we have not had occasion to consider the WTC presumption, we have generally addressed the proper standard of judicial review of a split vote by the Board of Trustees that results in the denial of ADR benefits. A decision by the Board of Trustees that a disability was not caused by a service-related accident will be upheld provided it is supported by "credible evidence" in the record (*see Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund,* 90 NY2d 139, 147 [1997]; *Matter of Borenstein v New York City Employees' Retirement Sys.,* 88 NY2d 756, 761 [1996]). Credible evidence "is evidence that proceeds from a credible source and reasonably tends to support the proposition for which it is offered" (*Meyer,* 90 NY2d at 147). Furthermore, "it must be evidentiary in nature and not merely a conclusion of law, nor mere conjecture or unsupported suspicion" (*id.*).

The legislature created the WTC presumption to benefit first responders because of the evidentiary difficulty in establishing that non-trauma conditions, such as cancer, could be traced to exposure to the toxins present at the WTC site in the aftermath of the destruction. Hence, unlike ordinary ADR claimants, first responders need not submit any evidence—credible or otherwise—of causation to obtain the enhanced benefits. Nevertheless, the legislature did not create a per se rule mandating ADR benefits for all eligible responders. Rather, it provided that a pension fund could rebut the presumption by "competent

evidence." Under this carefully calibrated framework, we believe that the competent evidence contemplated by the WTC presumption may be equated with the well-established credible evidence standard, provided that the pension fund bears the burden of coming forward with affirmative evidence to disprove causation (*see generally Matter of Goldman v McGuire*, 64 NY2d 1041 [1985], *affg for reasons stated below* 101 AD2d 768, 770 [1st Dept 1984] [treating competent evidence and credible evidence as interchangeable in the context of the Heart Bill statutory presumption]). In other words, unlike the typical application for disability benefits, a pension fund cannot deny ADR benefits by relying solely on the absence of evidence tying the disability to the exposure.

■ Applying this standard, we agree with the courts below in both *Bitchatchi* and *Macri* that the presumption that the officers' cancerous conditions were caused by their exposure at the WTC site was not rebutted by credible evidence and we therefore affirm. In *Bitchatchi*, the single journal article cited by the Medical Board to link petitioner's cancer with her prior ulcerative colitis condition does not support its conclusion. Indeed, the article states that because of "the paucity of data in this realm, the long-term fate . . . in the surgical management of ulcerative colitis has yet to be determined."[3] And even if petitioner's previous condition put her at a higher risk than most others for this kind of cancer, that fact alone would not rebut her claim that her exposure to the WTC site caused the cancer. Moreover, although the Medical Board referred to "clinical data" as the basis for its view that the two-centimeter mass found in October 2002 would have taken more than 13 months to develop, it failed to include the actual data in the record, effectively precluding us from assessing whether its finding of no-causation was supported by credible evidence. Because the Medical Board bore the burden on the issue of causation, this deficiency in proof is fatal.

■ Similarly, in *Macri*, the Medical Board referenced "literature" regarding cancer doubling times and "copious data" as to survival times in concluding that the lung cancer discovered in August 2002 likely predated September 11, 2001 and, therefore, was not caused by the officer's WTC-related

---

**3.** Jennifer Holder-Murray & Alessandro Fichera, *Anal transition zone in the surgical management of ulcerative colitis*, 15 World J Gastroenterology No. 7 at 769 (2009), available at http://www.wjgnet.com/1007-9327/15/769.asp.

exposures. But the Board failed to identify or include the specific literature or data upon which it relied, falling short of what is required by the statute. Even though petitioner did not bear the burden of proof on causation, she submitted letters from three oncologists opining that her husband's cancer was caused by his work at the WTC and Fresh Kills Landfill sites, particularly in view of his age and nonsmoker status. Consequently, we agree with the courts below that petitioner was entitled to WTC line-of-duty death benefits.

■ We further reject the Board of Trustees' fallback contention in these two cases that, even if it failed to rebut the presumption, the courts below erred in awarding petitioners ADR and line-of-duty death benefits as a matter of law. The Board relies on *Matter of Canfora v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II* (60 NY2d 347, 352 [1983])—a nonpresumption case—where we stated that "[t]he denial of accidental disability benefits in consequence of the tie vote can be set aside on judicial review only if the courts conclude that the retiree is entitled to the greater benefits as a matter of law." In its view, since petitioners failed to affirmatively prove as a matter of law that the cancerous conditions were caused by working at the WTC site, they are not entitled to the enhanced benefits. At the very least, the Board asserts, the cases should be remanded for further administrative proceedings. But the Board misapprehends the significance of the WTC presumption. When the Board fails to rebut the presumption, the WTC statute presumes causation and contemplates the award of ADR benefits—even if the claimant offers no medical proof. In these two cases, the presumption was not rebutted and, therefore, petitioners were entitled to the benefit upgrades.

## IV.

■ Turning to *Maldonado*, the Board of Trustees raises a threshold argument that the WTC presumption is inapplicable in this case because petitioner concedes that he had cancer prior to September 11, 2001. The Board points out that the statutory definition of a qualifying World Trade Center condition requires that there be "no evidence of the qualifying condition or impairment of health that formed the basis for the disability . . . in the relevant medical records, prior to September eleventh, two thousand one" (Retirement and Social Security Law § 2 [36] [a] [iii]; *see also id.* [c] [v] [providing that the

presumption applies to "new onset diseases resulting from exposure" including cancer]; *cf. id.* [c] [iii], [iv] [describing other diseases where the presumption applies even in cases of aggravation]). Accordingly, the Board asserts that the burden of proof remained with petitioner to demonstrate that his exposure aggravated or exacerbated the preexisting cancer (*see Matter of Tobin v Steisel*, 64 NY2d 254, 257 [1985]). Although this may be a valid argument, the Board failed to preserve it for our review, so we apply the statutory presumption to petitioner's claim that his cancer was aggravated by the exposure, as did the courts below.[4]

■ Under the statutory burden of proof, we believe the Board of Trustees did not satisfactorily rebut the presumption with credible evidence. Petitioner's cancerous tumor grew from the size of a walnut to a softball between September 2001 and November 2001. The Board and the courts below focused on the equivocal nature of the evidence submitted by petitioner in his attempt to demonstrate that the cancer was aggravated by his WTC exposure. In particular, they rejected the opinion of Dr. Sung provided in two letters as speculative and conjectural. But in light of the presumption, petitioner carried no burden to offer any evidence of causation. Simply put, the Board could not rely on petitioner's deficiencies to fill its own gap in proof. Because the record contains no affirmative credible evidence to rebut the presumption, we reverse and hold that petitioner is entitled to ADR benefits.[5]

Accordingly, in *Bitchatchi*, the order of the Appellate Division should be affirmed, with costs; in *Maldonado*, the order of the Appellate Division should be reversed, with costs, the determination of the Board of Trustees of the New York City Police Department Pension Fund, Article II annulled, and the matter remitted to Supreme Court with directions to remand to the Board of Trustees for further proceedings in accordance with this opinion; and in *Macri*, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH and PIGOTT concur.

---

4. Whether the statutory presumption applies to a claim that a preexisting cancer was aggravated by exposure to the WTC site therefore remains an open question.

5. Since petitioner has been receiving ODR benefits in the interim, the matter should be remitted for a recomputation of the appropriate level of benefits.

In *Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II* and *Matter of Macri v Kelly*: Order affirmed, with costs.

In *Matter of Maldonado v Kelly*: Order reversed, with costs, determination of respondent Board of Trustees of the New York City Police Department Pension Fund, Article II, annulled and matter remitted to Supreme Court, New York County, with directions to remand to respondent Board of Trustees for further proceedings in accordance with the opinion herein.