OPINION OF THE COURT
Debra Silber, J.
Petitioner Enis Boyer moves:
1. For a judgment pursuant to CPLR article 78:
A. upgrading petitioner’s non-line of duty disability pension to a World Trade Center disability pension; or
B. directing respondents to reconsider petitioner’s application in a fair and lawful manner; and
2. For an order pursuant to CPLR 2307 (a) directing the respondents to serve and file upon the date hereof:
A. all reports, recommendations, certificates and all other documents submitted to the Board of Trustees of the New York City Fire Department (FDNY), article I-B pension fund in connection with petitioner herein;
B. copies of any and all medical records, reports or notes relating to petitioner which are on file with the pension fund and/or Fire Department, not included herein.
Facts and Procedural History
Petitioner began working as a New York City emergency medical technician (EMT) in 1987. He passed all the physical and psychological testing required for the position. He was employed as an EMT for some 14 years prior to the 9/11 disaster.
On September 11, 2001, petitioner was a full duty EMT. He was off duty that morning but responded to the World Trade Center (WTC) when he heard that a plane had crashed into one of the towers. He proceeded to work 18 hours that day in rescue and recovery operations. In all, petitioner logged 219 hours in the following weeks, at ground zero and other locations including the morgue, retrieving and identifying body parts.
Subsequent to September 11, 2001, petitioner began to have significant disciplinary issues at work. On June 12, 2002, *989 petitioner was placed on restricted duty. He began going to the FDNY counseling services, starting on June 18, 2002. He also treated privately with Dr. Edward Farkas and subsequently with Dr. Michael Murphy. His mental state continued to deteriorate and in October of 2007, he was placed on extended sick leave. He returned to work in December of 2007. On April 15, 2008, while at work, petitioner started to stutter excessively and was taken by ambulance to Long Island College Hospital, where he was diagnosed with dysphasia.[1] In October 2009, Dr. Mary Jo DiMilia of the WTC medical monitoring program referred petitioner for a psychological examination, where he was examined by Dr. Daniel Pace.
In December 2009, petitioner applied for a performance of duty World Trade Center disability retirement. In support of his application, he submitted medical documentation of his mental condition. Petitioner was examined by Dr. Robert Reich on March 1, 2010. On March 16, 2010, upon review of Dr. Reich’s report, the medical documentation submitted by petitioner and petitioner’s interview, the Medical Board determined that petitioner suffered from a non-specified psychosis, but not post-traumatic stress disorder (PTSD) as a disability. The Medical Board further determined that petitioner was disabled from performing the duties of an EMT, but that there was competent evidence to rebut the presumption that petitioner’s service at the World Trade Center was related to his then existing condition; namely
“routine screening examinations for the WTC from the Fire Department as early as 2002 and some psychiatric evaluations related to anger management; however, there [was] no mention of regular visits to the Fire Department [sic] until June 2008. There was no diagnosis or mention of posttraumatic stress disorder as an issue related to the WTC, until [petitioner] applied for disability under Section 607-b pursuant to the WTC law.”
Petitioner opted to appeal the Medical Board’s recommendation before the Board of the New York City Employees’ Retirement System (NYCERS). Subsequently, the Medical Board reiterated its denial of petitioner’s World Trade Center disability retirement application pursuant to Retirement and Social Security Law § 607-b and recommended approval of a disability retire *990 ment pursuant to Retirement and Social Security Law § 605 (governing emergency medical technicians’ retirement for ordinary disability). At its July 8, 2010 meeting, at which petitioner and his attorney were present, the appeal was heard and the matter was remanded back to the Medical Board. The Medical Board issued another report on November 16, 2010, which requested additional documentation from petitioner. Petitioner submitted the additional documentation and another report was issued on July 7, 2011. After receiving further documentation, the Medical Board issued an addendum to its report, dated November 1, 2011. Each of these reports indicated that petitioner had “mental issues” prior to 9/11 and that the work at the World Trade Center did not contribute to his disability. On December 8, 2011, NYCERS adopted the recommendation of the Medical Board and denied petitioner the enhanced World Trade Center disability retirement benefits. Petitioner timely commenced this CPLR article 78 proceeding on April 4, 2012.
Discussion
“Retirement and Social Security Law article 15 provides a comprehensive scheme of retirement benefits through which city employees may receive a pension upon retirement from service, after meeting specified age and length-of-service requirements” (Matter of Roberts v Murphy, 2 NY3d 641, 644 [2004], citing Retirement and Social Security Law §§ 600 — 604-h). In particular, “Retirement and Social Security Law § 605 . . . governs emergency medical technicians’ retirement for ordinary disabilities” otherwise known as ODR benefits (Matter of Aitola v New York City Employees’ Retirement Sys., 25 AD3d 604, 605 [2006]), while “Retirement and Social Security Law § 607-b . . . governs emergency medical technicians’ retirement under a disability received in the line of duty,” namely ADR benefits {id.). With respect to ADR benefits for emergency medical technicians employed by the City of New York, Retirement and Social Security Law § 607-b (a) provides, in pertinent part, that if he or she, on or after March 17, 1996,
“becomes physically or mentally incapacitated for the performance of duties as the natural and proximate result of an injury, sustained in the performance or discharge of his or her duties [,] [he or she] shall be paid a performance of duty disability retirement allowance equal to three-quarters of final average salary.”
*991 While a claimant filing for ADR benefits ordinarily has the burden of proving causation (Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II, 20 NY3d 268, 276 [2012]), as part of the legislature’s response to the World Trade Center tragedy, the statute was amended to create a presumption in favor of ADR benefits for various first responders, including emergency medical technicians, who performed rescue, recovery or cleanup operations at specified locations, including the World Trade Center, the Fresh Kills Landfill, and the New York City morgue (id.). Specifically, “[u]nder the WTC presumption, the pension fund [here, NYCERS,] bears the initial burden of proving that a claimant’s qualifying condition was not caused by the hazards encountered at the WTC site” (id.). In this regard, Retirement and Social Security Law § 607-b (c) (1) (a) provides that
“Notwithstanding any provisions of this chapter or of any general, special or local law, charter, administrative code or rule or regulation to the contrary, if any condition or impairment of health is caused by a qualifying World Trade Center condition as defined in section two of this chapter, it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by such member’s own willful negligence, unless the contrary be proved by competent evidence” (emphasis added).
“To take advantage of the presumption, a claimant must have participated in operations at one of the enumerated locations for ‘any period of time within the forty-eight hours after the first airplane hit the towers’ or ‘a total of forty hours accumulated any time between September eleventh, two thousand one and September twelfth, two thousand two’ ” (Bitchatchi at 276-277, quoting Retirement and Social Security Law § 2 [36] [g]).
Moreover, “[a] claimant must also suffer from a statutorily defined qualifying condition” (id. at 277),[2] including “diseases *992 of the psychological axis, including post-traumatic stress disorder, anxiety, depression, or any combination of such conditions; or . . . new onset diseases resulting from exposure as such diseases occur in the future including chronic psychological disease” (Retirement and Social Security Law § 2 [36] [d] [i], [ii]).
Here, it is uncontroverted that petitioner fulfilled the participation requirement at the World Trade Center site. It is also undisputed that petitioner is disabled and unable to perform his job as an EMT. Under the above statutory framework, any person who is disabled under one of the enumerated physical or psychological conditions and has fulfilled the participation requirement is entitled to the presumption that his or her injuries were caused by his or her involvement at the World Trade Center site and “unlike ordinary ADR claimants, first responders need not submit any evidence — credible or otherwise — of causation to obtain the enhanced benefits” (Matter of Bitchatchi, 20 NY3d at 281). To rebut this presumption “the pension fund bears the burden of coming forward with affirmative evidence to disprove causation” and “unlike the typical application for disability benefits, a pension fund cannot deny ADR benefits by relying solely on the absence of evidence tying the disability to the exposure” (id. at 282).
On March 16, 2010, the Medical Board, after reviewing petitioner’s submitted medical records and Dr. Reich’s report, and after conducting an interview with petitioner, recommended that petitioner be given ordinary disability retirement benefits, not line of duty disability benefits (ADR), concluding that *993 “[biased on our consultant, the interview and review of the records, the Medical Board finds competent evidence to rebut the premise of WTC Presumption Law. The Medical Board does not find that the current psychosis and speech difficulties are related to the exposure at the World Trade Center.”
On November 16, 2010, the Medical Board authored another report, which indicates that it believed petitioner’s psychological problems predated 9/11. They requested additional psychological records “preceding the WTC disaster on 9/11/01.”
In their July 7, 2011 report, the Medical Board again recommended ordinary disability retirement benefits for petitioner. In its report the Medical Board states: “In our opinion, [petitioner] has been mentally disabled since early in his life . . . and there seems little evidence other than his last minute statement that a psychiatric illness was made materially worse by the effects of 9/11.”
On November 1, 2011, the Medical Board issued an addendum, reiterating its previous recommendation based on Dr. Reich’s reports. The addendum calls into question petitioner’s honesty, essentially accusing him of exaggerating his condition for financial gain. Specifically, the report states that “[p]eople with borderline personality are very frequently liars and distorters of truth for personal gain.” The report further indicates that “it is our opinion that [petitioner’s] symptoms were little affected by the events at Ground Zero and form a continuum from childhood to the present.”
The Medical Board’s opinion does not satisfy the requirement set forth in Bitchatchi, i.e., “proving that a claimant’s qualifying condition was not caused by the hazards encountered at the WTC site” (Matter of Bitchatchi, 20 NY3d at 276). Specifically, the Medical Board bases its conclusion on petitioner’s lack of evidence of causation which is not grounds for denial of the enhanced benefit. Indeed, their reports question petitioner’s veracity and specifically note that there was “little evidence” to establish his claim. This is antithetical to the Court of Appeals proclamation that a “petitioner carrie [s] no burden to offer any evidence of causation” {id. at 284 [emphasis added]).[3] Additionally, the Medical Board’s opinion lacks any explanation as to how the Medical Board determined petitioner’s psychological problems were long-standing and arose prior to 9/11 when *994 petitioner was able to perform as an EMT for 14 years prior to 9/11, and successfully passed all the psychiatric examinations.[4]
Moreover, the Medical Board did not address whether petitioner’s work at ground zero may have exacerbated his preexisting psychological problems (see Matter of Tobin v Steisel, 64 NY2d 254, 259 [1985]; Matter of Callahan v Board of Trustees of N.Y. City Fire Dept., 226 AD2d 628, 629 [1996]). This failure is noteworthy in that the Medical Board relied significantly on the medical report of its expert, Dr. Reich, who concedes, “It does appear that [petitioner] participated in the events of 9/11 and possibly was traumatized. The reports suggest that his condition worsened in 2002.”
Although not obligated to do so (see Bitchatchi, 20 NY3d at 281), petitioner submitted significant evidence, including medical reports and an extensive personal statement detailing his efforts at ground zero and how that work affected him, that he suffers from PTSD and that his psychological condition was severely impacted by his work at ground zero. While it is not the court’s duty to substitute its judgment for that of the Medical Board (Matter of Ruzicka v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 283 AD2d 581, 581 [2001]), the Medical Board and NYCERS have clearly examined this matter under the incorrect supposition that petitioner was required to establish causation.
In conclusion, the Medical Board’s limited review of both petitioner’s medical records and his own personal statement as well as the failure to apply the correct statutory presumption render the decision to deny petitioner the enhanced (ADR) retirement benefits arbitrary and capricious (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, *995 231 [1974]; Matter of Trump on the Ocean, LLC v Cortes-Vasquez, 76 AD3d 1080, 1083 [2010]).
Accordingly, it is ordered and adjudged that the petition is granted to the extent of annulling the findings of the Medical Board and NYCERS with respect to the disapproval of the petitioner’s application for accident disability retirement, and requiring the Medical Board to conduct a further evaluation of petitioner’s application for accidental disability retirement consistent with the court’s opinion; and the petition is otherwise denied.

. “[L]ack of coordination in speech, and failure to arrange words in an understandable way” (Stedman’s Medical Dictionary 479 [25th ed 1990]).

. Retirement and Social Security Law § 2 (36) (a) and (b) provide that
“36. (a) ‘Qualifying World Trade Center condition’ shall mean a qualifying condition or impairment of health resulting in disability to a member who participated in World Trade Center rescue, recovery or cleanup operations for a qualifying period, as those terms are defined below, provided the following conditions have *992 been met: (i) such member, or eligible beneficiary in the case of the member’s death, must have filed a written and sworn statement with the member’s retirement system on a form provided by such system indicating the underlying dates and locations of employment not later than September eleventh, two thousand ten; and (ii) such member has either successfully passed a physical examination for entry into public service, or authorized release of all relevant medical records, if the member did not undergo a physical examination for entry into public service; and (iii) there is no evidence of the qualifying condition or impairment of health that formed the basis for the disability in such physical examination for entry into public service or in the relevant medical records, prior to September eleventh, two thousand one.
“(b) ‘Qualifying condition or impairment of health’ shall mean a qualifying physical condition, or a qualifying psychological condition, or both, except that for any member identified in [subjparagraph (vi) of paragraph (e) of this subdivision, it shall only mean a qualifying psychological condition.”

. The court does note that the decision in Bitchatchi was issued after NYCERS adopted the decision of the Medical Board.

. At least one other court has found similar dissatisfaction with the Medical Board’s failure to make such an inquiry (see Matter of Conenna v Kelly, 28 Mise 3d 1203[A], 2010 NY Slip Op 51131[U], *5-6 [Sup Ct, NY County 2010] [“In her report, (the NYPD’s psychologist) does not explain, or even address, how (petitioner) was able to successfully perform as a police officer prior to working at the WTC site. Nor does she consider whether any latent depressive tendencies were brought out or exacerbated by (petitioner’s) work at the WTC site. Without any proper explanation, (the NYPD’s psychologist’s) assertion that (petitioner’s) depression is unrelated to his work at the WTC site appears arbitrary, especially because there is no dispute that (petitioner) was determined to be both physically and emotionally fit when he was hired in 1993, by which time the childhood conflicts were supposed to have already developed and should have been apparent”]).